## Francis Boxheimer v. William S. Gunn and others.

*Depositions:  Objections waived.*  An objection, to the depositions taken in a chancery suit, that they seem to have been taken *ex parte* and that they are certified, by the commissioner who took them, to be true and compared copies of the depositions and exhibits, etc., where no motion was made to suppress them, and no objection made to them in the court below, and where the defendant in a petition, upon which the order closing proofs was vacated, sets forth that witnesses had been produced and examined, and, without intimating any objection whatever to these depositions, seems to concede that the evidence already in was properly there, comes too late after the case has been brought into ·this court by appeal.

*Mortgage:  Renewal note.*  A mortgage, given to secure the payment by the mortgagor of his promissory note, and to indemnify the mortgagee, as accommodation indorser thereof, against the same, is not satisfied in equity, as between them, by a renewal of the original note by another for a larger amount, signed and indorsed the same as the first, which was in turn renewed by a third of like description, where the mortgagee, as indorser, has been compelled to pay such third note.  The mortgage secured the debt and not the note only.

*Notice:  Bona fide purchaser:  Mortgage notes.*  One who purchases premises covered by an undischarged mortgage cannot claim to be a purchaser without notice of the equities of the mortgagee, simply because the mortgagor has possession of, and exhibits to him, the notes described in the mortgage, where he has knowledge of facts sufficient to put a prudent man on inquiry, and the mortgagee is well known and easily accessible to him, and when inquiry of the mortgagee would have elicited information that the mortgage was still in force as between the original parties; such purchaser stands in no better position than the mortgagor himself.

*Conveyance given as security for precedent debt:  Bona-fide purchaser:  Consideration.*  A conveyance, given as security simply, for a precedent debt, of premises upon which there is a subsisting outstanding motgage that is valid between the original parties, to one who has been led to believe the mortgage satisfied, does not place the grantee, who has relinquished no remedy and lost no advantage by taking such conveyance, in the position of a *bona fide* purchaser for value, or clothe him with equities superior to those of such mortgagee, even though he acted in good faith and without notice.—*Stone v. Welling, 14 Mich., 514.*

*Submitted on briefs January 10.  Decided April 3.*

Appeal in Chancery from Kent Circuit.

This bill was filed by Francis Boxheimer against William S. Gunn, Hiram H. Sutton, Fanny A. Sutton, Levi Harrington and Denslow D. Davie.  Gunn alone answered, and the bill was taken as confessed by the other defendants.  Proofs were taken and on the hearing a decree was

entered granting the relief prayed. The defendant Gunn appealed. ·

*J. W. Ransom*, for complainant.

*Norris & Blair*, for defendant Gunn.

CHRISTIANCY, CH. J.

This was a bill to foreclose a mortgage executed by one Hiram H. Sutton (with his wife) to the complainant, upon certain lands in the county of Kent. The consideration stated in the mortgage was one thousand and fifty dollars. It was conditioned for the payment of two certain promissory notes executed by said Sutton, payable to the order of complainant, and indorsed by him, and to save the complainant harmless therefrom ; one of said notes bearing date May 14, 1869, for four hundred and fifty dollars, and the other of even date with the mortgage, May 29, 1869, for six hundred dollars; the first note maturing July 16, 1869, and the second, ninety days from its date.

The bill alleges that complainant became the indorser of these notes for the accommodation and benefit of Sutton, and that the mortgage was duly recorded in the office of the register of deeds on the 5th day of June, 1869. It alleges the negotiation and non-payment of these notes by Sutton, and that complainant was compelled to pay the same. In other respects the bill is in the usual form of a foreclosure bill, and prays for a foreclosure and sale. Defendant Gunn answers, admitting the notes and mortgage, but denies that said notes, or any part thereof, were paid by complainant; avers their payment by Sutton, and that thereby the mortgage ceased to be a lien on the land.

Defendant then alleges that about the 14th of April, 1870, said Sutton being indebted to him (defendant) in a large sum, to wit: about one thousand dollars, did sell and

convey to defendant by way of security, by warranty deed, duly executed and bearing date that day, the premises described in the mortgage; and as evidence to defendant that said mortgage had been paid and satisfied, said Sutton did then and there .produce and exhibit to defendant the identical notes described in the mortgage, which said notes were paid at maturity and are now in the possession of · defendant; claims that by this deed he is possessed of the legal title, and that by the payment of the notes the premises were released from the incumbrance of the mortgage.

A preliminary objection is taken to the evidence—depositions —on the part of the plaintiff, that part of it seems to have been taken *ex parte*, and that the whole of them are certified by the circuit court commissioner to be "true and compared *copies* of the depositions taken before me on," etc., and of the whole thereof, and of the exhibits A, B and C offered in evidence.    But there is nothing to show that they were taken *ex parte*, except that no notice of the taking is found in the record sent up.    The order for taking testimony was. regular.    Why the commissioner certifies them as "true and compared copies" does not appear.    But no motion was made to suppress, and no objection appears to have been made to them in the court below; and defendant Gunn having failed to take any evidence, till the time fixed by the order had expired and an order closing proofs had been regularly entered, presented a petition to vacate the order closing proofs, which was granted.    In this petition it is set forth that witnesses had been produced and examined—which can only refer to these same depositions—without intimating any objection whatever to them; and the petition seems to take it for granted that the evidence already in was properly there. We think, therefore, it is too late for the defendant to make this objection now for the first time after the case has been brought into this court by appeal.

The first question upon the evidence is, whether the state of facts was such that complainant's mortgage was a lien upon the land for the mortgage debt or any part of it, as between the mortgagor and mortgagee at the time the former executed the deed to Gunn; if it was not, this ends the case; if it was, then the question will arise whether the circumstances were such as to authorize complainant to enforce the mortgage against Gunn; or whether the latter occupies any better position than the mortgagor.

As to the first question, the evidence establishes beyond controversy that the notes for the payment of which, and indemnity against which, the mortgage was given, were indorsed for the benefit and accommodation of Sutton, the maker and mortgagor, and for his debt; that the first note of four hundred and fifty dollars was paid by Sutton, which satisfied the mortgage, to this extent; that the second, or six hundred-dollar note was not paid by Sutton; but when it became due he, being unable to pay it, and wishing to obtain some nine hundred dollars more of the bankers who held the note, and who required complainant's indorsement as a condition of the loan, persuaded and induced complainant to indorse another note made by him (Sutton) for fifteen hundred dollars, with which the six hundred-dollar note was taken up, and a discount obtained for the balance; Sutton agreeing to assign to complainant the policy on the house covered by the mortgage, and assuring him that he would meet the fifteen hundred dollars when due, and that he had shingles and other stuff from which he would be sure to do it. But when this fifteen hundred-dollar note became due Sutton was unable to meet this also, and again applied to complainant to indorse a renewal note for the whole, for the purpose of taking it up, which complainant was unwilling to do; but after much persuasion and being assured

that a barn had been built upon the lot, and on condition that Sutton would first pay one hundred and twenty-five dollars of it, he consented to indorse another note for the balance, thirteen hundred and seventy-five dollars, at sixty days; which he did. This note not being paid when due, and being protested, complainant was compelled to pay, and did pay.

It is thus too evident to admit of argument, that the six hundred-dollar note went first into the fifteen hundred dollar note, and then into the one thousand three hundred and seventy-five-dollar note indorsed by complainant, and was finally paid by complainant with a much larger amount when he paid the last note; that, as between him and Sutton, the six hundred-dollar note was never paid by the latter, but was paid by complainant; and to say that, as between them, the mortgage was satisfied by the taking up of this six hundred-dollar note in this way, because the mortgage, by its words, secured the *note* only, instead of the debt, would be mere quibbling not to be tolerated in a court of equity, which looks to the substance of the transaction and the purpose and intent of the parties. As *between them*, therefore, the mortgage was in full force and effect, and constituted a valid lien upon the property to the amount of the six hundred-dollar note, at least, when Sutton executed his deed to Gunn.

We are next to inquire whether the circumstances connected with the conveyance to Gunn, and the purpose of that conveyance were such as to invalidate the mortgage, or to render it inequitable to enforce it as against him.

When the six hundred-dollar note was taken up in the manner already described, it seems to have been handed over by the bankers to Sutton; and it remained in his possession, the mortgage remaining undischarged, and both parties treating it as still in force; and previous to the conveyance

being made to Gunn, this six hundred-dollar note and the four hundred and fifty-dollar note were shown to Gunn; but Sutton testifies: "I told him I had paid the notes when they came due, and had given another note of one thousand five hundred dollars which I. told him I had not paid, and it was not mentioned in the mortgage." He further says: "I asked Gunn to buy the mortgage of Mr. Boxheimer, and he said he would try to do it. This conversation took place before I executed the deed." On cross-examination, however, he says: "In my conversation with Gunn, I presume I asked him to buy up my note; I don't know what my language was,—whether note, mortgage or claim that he (Boxheimer) had against me."

Gunn, however, testifying in his own behalf, says Sutton told him the mortgage was paid; and as evidence of the fact, produced the two notes. He also denies that Sutton mentioned the one thousand five hundred-dollar note previous to the execution and delivery of the deed. And though Sutton seems to have forgotten or overlooked the taking up of the one thousand five hundred-dollar note and the execution of the one thousand three hundred. and seventy-five-dollar note, we are still inclined to give greater credit to his testimony than that of Gunn, in relation to what he told Gunn about the one thousand five hundred-dollar note and the mortgage. There is something in the conduct of Gunn himself which appears somewhat unnatural and unusual for one about to take a conveyance of property having a mortgage upon it undischarged of record, unless he had some reason to believe that this mortgage might still be a lien upon the property, as between the parties to it; but which is quite consistent with the theory that he had reason so to believe, and that he was apprehensive that if he inquired of the mortgagee he might learn facts which would disqualify him from setting up any

24 MICH.—48.

claim as an innocent purchaser. Both he and the complainant lived in the same city of Grand Rapids, and were well known to each other. Gunn knows this mortgage still stands upon the record undischarged. He contemplates taking a conveyance of the land from the mortgagor. Most men, and we may say any prudent man, under such circumstances, if acting in entire good faith, would prefer having the mortgage discharged of record, rather than to trust to any evidence of payment not of record, especially as the record showed upon its face that it was not only to secure the payment of notes indorsed by the mortgagee for the mortgagor, but for indemnity against them, when the possession of the notes by the mortgagor would by no means be conclusive, even of their payment by the mortgagor, and still less of the fact that the mortgagee had been indemnified and paid all loss or damage he might have been put to. But, instead of taking this course, so obviously natural to a prudent man acting in good faith—instead of asking the mortgagee to release, or inquiring of him why he did not,—he takes quite another course, which we shall allow him to state in his own language. After stating that Sutton had produced to him the two notes as evidence that the mortgage was paid, he proceeds: "I then went to my counsel, Col. Gray; he took the two notes and went to the record" [of this undischarged mortgage], "in the register of deeds' office, and there compared the two notes and made an abstract of the record." [This abstract consisted only of a reference to this mortgage, a statement of its condition, when recorded, and a description of the notes.] "The object of the comparison was to see if defendant's exhibits, D and E," [the four hundred and fifty-dollar and the six hundred-dollar notes] "were the identical notes described in the mortgage; he said they were, and the mortgage was paid; I was present and made the comparison with him; I ordered

the deed to be drawn and asked Mr. Sutton to execute it." Now, when a release of record would have been so much better and more certain, which the mortgagee, if the mortgage was satisfied, was bound under a heavy penalty to execute, and which, in all probability, would have cost less, why,—unless he knew or believed complainant claimed the mortgage to be still in force, and that if he applied to him for a release, facts would be developed which would show the claim to be valid, and put an end to all pretense of claim to be a purchaser in good faith and without notice,— why does he choose to employ a lawyer to examine the condition of the mortgage and description of the notes, and make an abstract of them and give him his legal opinion, that the notes being taken up,. the mortgage is in effect paid? We think if he had really believed the mortgage satisfied, as between the parties to it, he would have taken the natural and direct course, and requested a discharge of record; and we are satisfied he had notice from Sutton of facts which induced him to believe that the mortgage was, or at least might be, still in force between the original parties, and that, contriving to place himself in the apparent position of a purchaser or encumbrancer without notice, he purposely avoided inquiry of complainant, because he feared that clear notice of the facts might thus be brought home to him.

We think, therefore, he stands in no better position than Sutton, the mortgagor, and that complainant has a right to enforce the mortgage against him in the same manner as he could against Sutton, had no conveyance been made.

But there is another view of the case which leads to the same conclusion. The defendant's answer, as we have already seen, alleges the conveyance to Sutton to have been made to him merely as security for a precedent debt, and does not claim that any other consideration was paid or agreed

to be paid; or that any time was to be given or had been given; or that the form of the debt was changed; or that he had relinquished any remedy in consideration of the conveyance; or finally, that his own position would not be equally as good to-day, if the conveyance should turn out to be utterly valueless, as it was before the conveyance. He has not, therefore, by his answer, placed himself in the position of a *bona fide* purchaser or encumbrancer for value, with equities superior to those of the complainant, though it should be admitted that he acted in good faith and without notice. See *Stone v. Welling, 14 Mich., 514.*

The decree of the court below must be affirmed, with costs to complainant, in both courts.

The other Justices concurred.