DAVENPORT C. HANOLD v. HUGH KAYS, GEORGE W. OWEN, AND CHARLOTTE S. OWEN.

*Payment of note by surety—Bona fide purchaser—Consideration—Discharge of pre-existing debt.*

1. A *surety* on two promissory notes agreed with the maker and payees to pay the same, and did make such payment, in consideration of the conveyance to him by the maker of a parcel of land incumbered by an *unrecorded* mortgage, of which the surety had no *actual* notice until *after* making such payment.

   *Held*, in a suit by the mortgagee to foreclose his mortgage, that by such agreement the surety assumed a *new* legal obligation, and that the payment of said notes, before notice of complainant's equities, formed a sufficient consideration for the deed.[1]

2. The doctrine that the extinguishment of a pre-existing debt is not a valid and sufficient consideration for the transfer of a negotiable instrument was repudiated in *Bostwick v. Dodge*, 1 Doug. 413; and it has ever since been held in this State that such discharge is as good a consideration, in such a case, as the payment of money, or delivery of any other species of property. *Outhwite v. Porter*, 13 Mich. 533, 539.

3. The holder of a mortgage given for a precedent debt is a purchaser for value. *Baker v. Pierson*, 5 Mich. 459.

Appeal from Van Buren. (Mills, J.) Argued November 17, 1886. Decided January 20, 1887.

Bill filed to correct mistake in the description of land in a mortgage, and to foreclose the same. Defendant Kays appeals. Decree reversed, and one entered dismissing bill. The facts are stated in the opinion.

[1] See *Cook v. Brown*, 62 Mich. 473; *Wardell v. Williams*, Id. 51.

*Annable & Fitch,* for complainant.

*Spafford Tryon,* for defendant Kays.

MORSE, J. This is a suit in equity to rectify a mistake made in the drafting of a mortgage as to the description of the premises, and to foreclose the same upon the land in- tended to be conveyed therein.

The facts as to the inception of the mortgage are undis- puted.

The defendant George W. Owen, on the twenty-third day of June, 1883, borrowed $600 of the complainant. He and his wife gave their note for said sum, payable in one year, with interest at 8 per cent., and secured the same by a real estate mortgage executed and delivered the same day.

The land was known as the "Lensenmayer forty," and the parties went to one C. G. George, a conveyancer, and requested him to draft a mortgage for $600 from the Owens to Hanold upon the Lensenmayer forty.

They did not give him the description of the land, but he obtained the same from a map in his possession.

He made a mistake, describing the premises as located on section 11, when they were in fact on section 17.

Neither complainant nor defendants knew of this mistake for a long time, and the mortgage was recorded as drawn.

Kays is made a defendant because of a warranty deed of the land in question, executed and delivered to him by the Owens, September 2, 1884.

Complainant claims—

1. That Kays, at the time of taking his deed, had notice of the mortgage to complainant, and that the real intent of the parties to the same was that the mortgage should be a lien upon the Lensenmayer forty.

2. That the only consideration for the said conveyance to Kays was an antecedent liability from said George W. Owen to said Kays, which was only contingent in its nature.

Kays defended on the ground that he purchased the

premises for a valuable consideration, and without notice of the rights of complainant in the same. Owen and wife did not defend. The court below adjudged that Kays was not a *bona fide* purchaser for value, and granted the relief asked by complainant.

We find the facts in relation to Kays' deed to be as follows:

The defendant George W. Owen was a country merchant, engaged in business for many years at Keelersville, in the county of Van Buren. Kays was a farmer living in the neighborhood, and trading more or less at Owen's store. He was also an indorser or surety upon three or four notes of Owen to different parties. At or about the time of the making of this deed, Owen had been sued in the circuit court for the county of Van Buren by a creditor, and a judgment of over $1,300 rendered against him on the first day of September, 1884. The next morning early he came to the house of Kays, and said to him that he could not put off the collection of this judgment; and, as Kays and one John Rosevelt had always accommodated him, he wanted to fix up their matters at once. He asked Kays to pay two notes, one to Bock and one to Hill, upon which notes Kays was holden as surety, and he would turn him out property to pay him for so doing; said he did not wish to turn out his homestead, but would pay him in any other property he had. Kays asked him what he had, to which Owen replied that he had some village property, a saw-mill, lumber and logs, and his timbered lot (the Lensenmayer forty).

He asked Kays to go at once to Decatur, and "fix the business right up." Kays preferred to go to Paw Paw, and thereupon they drove to the residence of John Rosevelt, who hitched up his double team and went with them to Paw Paw. Rosevelt was also surety upon notes for Owen, and upon arriving at Paw Paw he and Kays sought out O. N. Hilton, an attorney at law, and at that time judge of probate, and

told him that they had a matter to fix up with Owen, and wished to complete it that day. Owen soon came into the office, and the matter was arranged. Kays told Owen that he did not wish to take the mill, lumber, and logs, as that was out of his line of business, but he would take the Lensenmayer forty. According to the testimony of Judge Hilton, who is corroborated by Kays and Rosevelt, Kays asked Owen if the title was all right. Rosevelt then said: "The title is all right, for I have looked it up myself."

Hilton then asked Owen if any execution had been levied upon it, knowing of the judgment taken the day before. Owen said he thought it was all right, but finally, upon Hilton's advice, Hilton and Kays went into the clerk's and register's offices, and found the title clear of record.

When they came back, Owen said:

"Now I will tell you what I would like to have you do. I would like to have you arrange this so that if I can pay for it in a year I can have the land back."

Mr. Kays replied:

"I had just as soon do that as not. All I want is my money, and I will sign a paper agreeing to deed it back to you at the end of that time on your paying me back $1,000."

Judge Hilton then drew an article, which Kays signed, providing that, upon payment by Owen to Kays of $1,000 within a year from the date, the premises described as having been deeded by Owen to Kays, of the same date, should be deeded back to Owen. Hilton then stated to the parties that this instrument would convert the deed into a mortgage, and advised against the making of it. Kays then stated that he did not want a mortgage on the land, and the instrument was destroyed. A deed of the premises from Owen and wife to Kays was then drawn, and read over to Owen, who signed it.

The deed was taken to Owen's house the same day, and there executed by the wife, in the presence of her husband,

Kays, and John and Charles Rosevelt. The notes claimed to form a consideration for this deed were afterwards paid by Kays. They amounted to about $1,000, and were so called and reckoned in the transaction. The land was worth from $800 to $1,200.

The burden of proof was upon the complainant to show that Kays had notice of his unrecorded lien upon the premises. We are not satisfied that Kays had any such notice. On the contrary, the preponderance of evidence is decidedly in favor of his claim that he had no notice, and received the deed in good faith.

The testimony of George W. Owen is relied upon to prove notice. Without going into detail as to our reasons, we are not inclined to put any reliance upon his evidence, as it is full of such flat contradictions of himself that the truth in it, if any, is not clearly discernible. He testifies that he informed Judge Hilton, in the presence of Kays, of the existence of the complainant's mortgage, and that it ought to be mentioned in the deed, and that conveyance made subject to it, and Hilton replied it would make no difference. This is denied by Kays, Rosevelt, and Judge Hilton, and is not reasonable. He had offered to turn out to Kays the mill property, which was unincumbered; but Kays preferred to take the land in question.

If the deed was to have been subject to this mortgage, the payment could not have amounted to over $300, and Kays would not have been likely to have put aside the mill property, worth the amount of his liability upon the Bock and Hill notes, and voluntarily accept this land, thus incumbered, in lieu thereof.

Another witness swears that upon a certain day, the date of which he well remembers, coming from Hartford towards Keeler on foot, he overtook Kays and his hired man, who each had a load of lumber. He got on and rode with Kays a few miles. He claims he had a conversation with Kays about

some trouble the witness had experienced with Owen, and in the talk told Kays that Hanold had loaned Owen some money, for which Owen had given a mortgage upon this land. This he claimed was on the fifteenth day of December, 1883, and he fixed the time by a note that he paid off that day, and remembered it because he paid it the day it was due, and no interest was charged him.

There seems to have been no particular reason why he should have given this information to Kays, and the evidence has a suspicious look, to say the least. Kays denies any such talk, and both he and his hired man swear that the witness Struble never rode upon a load of lumber with Kays, and, furthermore, that neither of them drew any lumber that day.

Hanold, the complainant, also testifies that on the fifth day of July, 1883, he drove along the road by Kays' house, his errand being to get one Ruble, who was working for Kays, to doctor a sick horse for him. He found Ruble and Kays out by a shop that stood at the side of the road. George Kays, a son of the defendant, was also present. Hanold claims that Kays got to talking with him about his sick colt, and during the conversation Hanold asked him if he owed Owen some $800 or $900. Kays said he thought not. Hanold told him that he had so heard and understood from Owen, and that was the reason he asked the question, as he (Hanold) had let Owen have some money,—$600. Kays then asked him what security he had, and Hanold replied he had a mortgage on the Lensenmayer forty. Kays then said: "You are all right, then."

This conversation is denied by Kays, and also by Ruble and George Kays, who were in a position to have heard it had it occurred.

It is also questioned by the subsequent conduct of Hanold, about which there is no dispute. On the day of the presidential election in 1884, Hanold accosted Kays in the hall

where the election was being held in their township, and asked him if he would not pay the mortgage. Kays said "No;" he had a clear warranty deed of the land. Hanold told him that Owen said Kays would pay the mortgage if waited upon for a while, but Kays said he would not pay it. Nothing was said in this conversation about any previous talk about this mortgage, or any notice that Kays had of its existence. After the commencement of this suit, Hanold and Kays had another conversation, in the store of Franklin Hill. Kays said to Hanold: "They have served the papers on me in regard to that mortgage. I think you have commenced on the wrong man." Hanold replied: "I don't know about that." Mr. Kays then said: "Mr. Hanold, I never knew you had a mortgage on that piece of land until election day, when you told me." Hanold said he thought it very strange; that he supposed every man in town knew it.

In this conversation Hanold did not claim that he had ever notified Kays of the mortgage previous to the execution of his deed, as he would have been apt to have done had it been true that he told him of it in July, 1883.

Franklin Hill, and another person who heard the conversation, also testify that, in the winter of 1884 and 1885, Hill asked Owen, in Hill's store, if he had ever told Kays that Hanold had a mortgage upon the Lensenmayer forty, and Owen replied that he did not know as he ever had, and that he could not swear that Kays knew there was a mortgage upon it.

There is no other evidence in the case having any tendency to prove any knowledge on the part of Kays of the existence of the Hanold mortgage on the second of September, 1884; nor is there anything in the proofs showing any collusion upon the part of Kays with Owen to defraud the creditors of the latter, outside of Owen's evidence, which we regard as worthless.

The evidence establishes the fact that Kays paid the notes

to Bock and Hill, as he agreed to, and he thereby became a purchaser for value of the land.

He relinquished his rights as a surety upon said notes, and agreed absolutely to pay them as his own, thereby expressly assuming a new legal obligation. He did pay them before notice of complainant's equities. This payment formed a sufficient consideration for the deed.

The taking of this land in payment of a precedent debt from Owen to Kays would not, as claimed by complainant, in this State, prevent Kays from being regarded as a purchaser for value. This deed was not taken as security, as in the case of *Boxheimer v. Gunn,* 24 Mich. 372,[1] but as an absolute conveyance, for which Kays agreed to pay, and did pay, two notes upon which Owen was primarily liable, thus discharging Owen from the debt. But if the notes had been payable by Owen to Kays, and therefore evidencing a precedent debt, a surrender of the notes to Owen by Kays, or a cancellation or destruction of them, would nevertheless have furnished a sufficient consideration for the deed. The doctrine that the extinguishment of a pre-existing debt is not a valid and sufficient consideration for the transfer of a negotiable instrument was repudiated in *Bostwick v. Dodge,* 1 Doug. 413; and it has ever since prevailed in our State that such discharge of a precedent indebtedness is as good a consideration, in such a case, as the payment of money, or the delivery of any species of property whatever. *Outhwite v. Porter,* 13 Mich. 533, 539.

In *Baker v. Pierson,* 5 Mich. 459, it was held that the holder of a mortgage given for a precedent debt was a purchaser for value.

We know of no good reason why one who takes a deed of

---

[1] In this case it was held that a deed given simply as security for a pre-existing debt, of land incumbered by a mortgage which the grantee is led to believe is paid, does not place him in the position of a *bona fide* purchaser or incumbrancer for value, with equities superior to the mortgagee.

land in absolute payment of a debt due him, or discharges and pays a note for the maker upon which he is a surety, as the consideration for such deed, has not as good a standing, as a purchaser for value, as one who pays money or exchanges property therefor.

The decree of the court below must be reversed, and the bill of complainant dismissed, with costs of both courts, as against the defendant Kays, whose title must prevail.

The other Justices concurred.