MAYNARD *v.* DAVIS.

127    571<br>f155   ³ 68

1. DEEDS—DOWER—RELEASE—ACKNOWLEDGMENT.

   3 Comp. Laws, § 8930 (being section 13, chap. 66, Rev. Stat. 1846), provides that a married woman may bar her right of dower by joining in a deed of conveyance with her husband, and acknowledging the same "as prescribed in the preceding chapter." *Held*, that, notwithstanding the after repeal of the particular provision to which this section refers, a deed executed by husband and wife, not acknowledged by the wife, is insufficient to bar dower.

2. SAME—RESCISSION—MARKETABLE TITLE.

   Where complainant received from defendant, pursuant to a contract for an exchange of lands, a deed purporting to be executed and acknowledged by defendant and his wife, but in fact signed and acknowledged by the wife in blank, and without reference to any particular lands, and filled in by defendant after the wife's refusal to execute a deed of the land in question, complainant could rescind the transaction and enforce a reconveyance, as he was entitled to a marketable title.

3. MORTGAGES—BONA FIDE HOLDER—PRECEDENT DEBT.

   One who takes a note and mortgage as additional security for a pre-existing debt, without releasing any security already held or agreeing to extend the time of payment, is not a *bona fide* holder for value.

Appeal from Ingham; Wiest, J.  Submitted May 10, 1901.  Decided July 10, 1901.

Bill by Arthur W. Maynard against Daniel L. Davis, Sarah Davis, Lilias G. Davis, and the First Commercial Bank of Pontiac to set aside a deed.  From a decree for complainant, defendant Daniel L. Davis appeals. Affirmed.

*L. B. McArthur* and *H. W. Smith*, for complainant.

*Smith & Hood* and *P. B. Bromley*, for appellant.

Long, J.  This cause was heard on pleadings and proofs taken in open court in the court below, and a decree entered setting aside the deed of conveyance as prayed in the bill. . The court below filed a written opinion, which sets out fully the controversy between the parties, as follows:

"On May 1, 1899, complainant was the owner of five houses situated on two lots in the city of Lansing, and a portable sawmill at Imlay City.  The defendant D. L. Davis was the owner of a farm of 280 acres in Jackson county, this State.  Before that time complainant had listed his property for sale or exchange with the Cortrite Real-Estate Exchange, of Pontiac.  Defendant D. L. Davis is a resident of Pontiac.  Complainant, through the Cortrite Exchange, opened negotiations with Davis for the exchange of their properties, and he personally took part in the negotiations.  Davis investigated complainant's property, and Davis and Maynard together visited Davis' farm in Jackson county.  They returned together to Pontiac, and entered into an agreement to trade upon Maynard's giving a $5,000 mortgage back on the farm.  Davis executed a so-called 'bond' to convey by sufficient warranty deed, within five days, to Maynard, the farm of 280 acres in Jackson county.  This was on May 6, 1899. Davis was at that time a married man, and his wife was living in Pontiac.  Upon agreeing upon the terms of the trade, Maynard went to Imlay City.  Davis prepared a deed to Maynard of the farm, and sent it up to the house for his wife to sign.  This she refused to do, and said she

wanted time to look into the matter. At this time Davis and his wife had not been living together for some little time. His wife is a woman of some means. Davis is a man of property.

"The defendant Davis claims that for years he has had an arrangement with his wife by which she has signed and acknowledged in blank the printed form of warranty deeds, and verbally authorized him to insert descriptions, names, etc., to suit his convenience, when he cared to convey his property; and he claims that, at the time he sent the Maynard deed to his wife to sign, he did not know that he had one of the blanks left she had signed; that, after she had refused, he had found one of those signed blanks that he had partly filled up to convey some Detroit property, changed the date, and inserted Maynard's name, wrote the description of the farm on a piece of paper, and pasted it on the deed over the description of the Detroit property. There was no acknowledgment of this deed by Mrs. Davis, except when she signed the blank; and the testimony shows that this blank was signed some little time before any negotiations were opened up between Davis and Maynard,—at least a year before that time. When the deed was so prepared, Cortrite's Exchange notified Maynard at Imlay City, and he came to Pontiac. The deed was delivered to him, and he gave back a mortgage on the farm for $5,000. Maynard then went back to the farm, remained there a few days, and then went back to Pontiac, employed counsel, and filed his bill to rescind the whole transaction.

"So far as the claim of the complainant that the farm was misrepresented to him is concerned, he is not supported by the proofs sufficiently to warrant the court in granting him relief for that reason. He visited the farm, and had an opportunity to investigate its condition, and, if he did not investigate it sufficiently, it was his own fault. The claim, also, that a 40-acre parcel not belonging to the farm was pointed out to him in the presence of Davis as belonging to the farm, is not sufficiently shown to the court to be the fact.

"The whole case, as I view it, turns upon the question as to whether complainant has received from the defendant D. L. Davis a sufficient conveyance of the Jackson county farm; because, if he has, I am inclined to leave the parties where they have placed themselves, so far as the farm is concerned. Complainant was entitled to receive from the defendant D. L. Davis a good and sufficient war-

ranty deed of said farm, conveying to him a title in fee
simple, in exchange for his Lansing property.   It is ad-
mitted that Davis' wife had never signed a deed of this
farm since the beginning of any negotiations between
Maynard and Davis.   So far as Davis himself is con-
cerned, I find the deed conveys his individual interest in
the land, although it is a bungling affair, and the deed,
even to see it, would make one suspicious that all was not
right, and upon its face demands explanations. ‸ However,
under the proofs, he would be estopped from ever denying
that it passed his interest.

"Many authorities are  cited by counsel for defendant
holding that Maynard's remedy for defects in the title is
against Davis on his covenants of warranty in his deed.
These cases are not in point.   This is not a case of defec-
tive title in Davis, but is a case where he has title, but has
not conveyed full title.   Again, it is claimed on the ques-
tion of the effect of filling blanks in sealed instruments
that it has been held by the courts that when a·grantor
signs and seals a deed having unfilled blanks, and gives it
to an agent with authority to fill the blanks and deliver it,
if the agent fill the blanks as authorized, and delivers it to
an innocent grantee without knowledge, the maker is
estopped to deny that the instrument as delivered is his
deed.   This may be true as an  abstract proposition,
because in those cases I take it the grantor  directed in
what way and manner the blank spaces should be filled,
and the agent filled them in accordance with those direc-
tions, and for that reason the courts estop the grantor
from denying the authority of the agent, the same as if he
had done the thing himself, instead of by another.   But
that is not this case.   Here, without any understanding as
to this particular piece of property being sold, long before
any negotiations were opened up between the parties, Mrs.
Davis executes in blank, even as to the acknowledgment, a
printed form of warranty deed.   I do not know of any
authority, nor can I conceive of any authority, in this
State, that would bind her by the acts of her agent, whom
she had verbally authorized to fill in those deeds.   But, even
if there was any authority along that line, then it was
nothing more nor less than a verbal power she had given
to her husband, and she had a right at any time to revoke
the power; having been given by word of mouth, she
might revoke it in the same manner; and the proofs show in
this case that, when this deed was taken to her of this par-

ticular property, she refused to execute it, and never has executed it; that Davis knew of such refusal; and thereby she revoked any power that she might theretofore have given to Davis, her husband, to make any deed of this property which would bind her.

"A deed must be completely executed before the delivery of it can be effectual to pass title. Therefore it has been held that a bill in equity may be maintained by a married woman who has signed and sealed a blank form of deed, giving parol authority to fill it up so as to convey her right of dower and homestead in the lands of her husband, after the instrument has been filled in in her absence, and signed and delivered by her husband, to compel the person whom the deed names as grantee to reconvey her estate in the premises. Her right to relief, it seems, is not affected by the fact that she gave her assent when informed that the deed had been filled up in conformity to her authority. 1 Devl. Deeds, § 310; *Burns* v. *Lynde*, 6 Allen, 305. When the blank deed was signed by Mrs. Davis it had no meaning or validity. If such an act can be done under a parol agreement in the absence of the grantor, its effect must be to overthrow the doctrine that an authority to make a deed must be given by deed. The court says further:

" 'We do not think that such a change of the ancient common law has been made in this Commonwealth, or that the policy of our legislation favors it, or that sound policy would dictate such a change. Our statutes which provide for the conveyance of real estate by deed acknowledged and recorded, and for the acknowledgment and recording of powers of attorney for making deeds, are evidently based on the ancient doctrines of the common law respecting the execution of deeds; and the valuable and important purpose which these doctrines still serve is to guard against mistakes which are likely to arise out of verbal arrangements, from misunderstanding and defect of memory, even where there is no fraud. * * * If this method of executing deeds is sanctioned, it will follow that, though the defendant has a regularly executed deed, yet it remains to be settled by parol evidence whether he ought to have been the grantee, what lands should have been described, whether the deed should have been absolute or conditional, and, if conditional, what the terms of the condition should have been. To leave titles to real estate subject to such disputes would subject them to great and needless insecurity.'

"The complainant has not received from the defendant Daniel L. Davis any conveyance of the inchoate right of

dower of his wife, Lilias G. Davis; therefore he has not received the title that he bargained for. There is no way to compel Lilias G. Davis to convey her inchoate right of dower in this property to Maynard, and he has not a marketable title, such as he was entitled to receive; nor has he a title in fee simple.

"The only remaining question, then, is as to whether, for this reason, Maynard has a right to rescind, and to a reconveyance of his property, or whether he should be left to his remedy as against Davis. I can hardly agree with counsel that the law compels him to seek his remedy against Davis, and that he must keep the property, and lose the property that he conveyed to Davis. The law certainly does not, in my mind, make a remedy depending upon a man's financial condition, because, if Davis was not financially responsible (if that was the law that the remedy was against him personally for damages, or under the covenants of warranty in his deed), then the complainant in this case would be absolutely without remedy. The law certainly does not lay down a rule for one class of people and another rule for another class, depending upon their financial ability. It seems to me that the proper course in this case, and the equitable one, is to place the parties back where they were before this transaction was entered into. The testimony of the defendant and his witnesses shows that the farm was worth, in their estimation, at least the amount that complainant gave for it; so, if that is true, the defendant loses nothing if placed back where he was before the transaction was entered into. A decree in this cause will be entered in accordance with the prayer of the bill, and that defendant convey to complainant the property in the city of Lansing within 30 days after the signing of the decree herein; in default thereof, this decree to stand as such conveyance, and may be recorded. The complainant is to convey to Davis the farm in Jackson county, and complainant to recover his costs as against the defendant Daniel L. Davis."

Defendant Daniel L. Davis appeals. He now makes the contention that certain chapters of Miller's Compilation of the Statutes of 1897 have been transposed, so that the chapter relating to alienation by deed follows the chapter relating to estates in dower, and, as the relative position of the two chapters now is, section 8930 should refer to the succeeding, and not to the preceding, chapter. On exam-

ination of this compilation, we find this transposition has been made. Section 8930 provides:

" A married woman residing within this State may bar her right of dower in any estate conveyed by her husband, or by his guardian, if he be under guardianship, by joining in the deed of conveyance, and acknowledging the same as prescribed in the preceding [succeeding] chapter; or by joining with her husband in a subsequent deed, acknowledged in like manner; or by deed executed by the wife alone to one who has theretofore acquired and then holds the husband's title, provided the intent to bar her right of dower shall be expressed in said deed."

It is therefore contended that the particular provision to which section 8930 refers is section 12 of chapter 65 of the Revised Statutes of 1846, which provided that: "When any married woman residing in this State shall join with her husband in a deed of conveyance of real estate situate within this State, the acknowledgment of the wife shall be taken separately and apart from her husband; and she shall acknowledge that she executed such deed freely, and without any fear or compulsion from any one;" that section 12, above cited, was repealed by Act No. 104 of the Public Acts of 1875; that a new act was passed in 1877 (Act No. 62), providing that thereafter the acknowledgment of any married woman to a deed of conveyance or other instrument affecting real property might be taken in the same manner as if she were sole. It is claimed that this was not enacted by the legislature as a part of, or as an amendment to, the chapter relating to alienation by deed, but as an independent provision, placed in its present position by the compiler, and is a section which the legislature did not have in mind or contemplate when section 8930 was enacted. It is therefore contended that there is now in the chapter relating to alienation by deed no special provision as to how a married woman should acknowledge a conveyance; that the only effect that section 8930 can now have is that a married woman may bar her dower by joining in a deed of conveyance with her husband; that her conveyance, the same as her husband's, is

good as a common-law conveyance, but, if it is desired to make it entitled to record, it must be acknowledged and witnessed the same as other deeds of conveyance.

We think section 8930 can have no such construction as contended for. That section contemplates that a married woman can bar her dower by joining in a deed with her husband, and acknowledging the same in some form. If she be sole, an acknowledgment must be taken, if the deed is to be recorded; and, if married, a deed not acknowledged by her would not bar dower, under the provisions of section 8930. We think the court below was not in error in holding that the wife of Mr. Davis did not bar her dower by an acknowledgment of a deed in blank, under the circumstances here shown. The deed in question did not convey a marketable title. A purchaser of lands can never be required to accept a doubtful or unmarketable title.

The court below found, in reference to the defendant the First Commercial Bank of Pontiac, as follows:

"The sole question to be determined is whether the First Commercial Bank is a good-faith holder, for value, in the usual course of business. At first I was of the impression that the same rule would apply if the note was taken as additional collateral security as if taken in payment of the pre-existing debt; but I find upon examination that, while this is the rule in the majority of the States, and so stated by some of the best writers, it does not prevail in this State. That the bank would be a holder for value if it had taken the note in payment of the debt of Davis, or to apply as a payment thereon, is clear in this State since the decisions in *Bostwick* v. *Dodge*, 1 Doug. 413 (41 Am. Dec. 584); *Outhwite* v. *Porter*, 13 Mich. 533; *De Mey* v. *Defer*, 103 Mich. 245 (61 N. W. 524); *Boxheimer* v. *Gunn*, 24 Mich. 379; *Hanold* v. *Kay's*, 64 Mich. 439 (31 N. W. 420, 8 Am. St. Rep. 835). But, if the situation of the bank remains unchanged; if it released nothing, but holds everything it held before the putting up of the note and mortgage,—then it is not, in this State, a holder for value in the usual course of business. As was said by Justice MONTGOMERY in *De Mey* v. *Defer*, 103 Mich. 245 (61 N. W. 524):

" ' The complainants contend that, as the $3,000 mortgage was given to secure an antecedent debt, the defendant cannot be treated as a *bona fide* purchaser.    This would be true if the position of the mortgagee were unchanged; but the defendant, upon the occasion of accepting the mortgage, extended the time for the payment of the amount secured three years.'

" " The cases in the Supreme Court of this State involving the question of whether the purchaser of commercial paper is entitled to the protection accorded a *bona fide* purchaser have been determined upon the issue of whether the purchaser parted with anything of value; and if his position remained unchanged, and he parted with no rights, and if he accepted commercial paper as security merely to a pre-existing debt, without extending the time of its payment or the releasing of some right he then had, he does not become a *bona fide* purchaser.    As was said by Chief Justice CHRISTIANCY in *Boxheimer* v. *Gunn*, 24 Mich. 379:

" ' The defendant's answer alleges the conveyance to Sutton to have been made to him merely as security for a precedent debt, and does not claim that any other consideration was paid or agreed to be paid; or that any time was to be given or had been given; or that the form of the debt was changed; or that he had relinquished any remedy in consideration of the conveyance; or, finally, that his own position would not be equally as good today, if the conveyance should turn out to be utterly valueless, as it was before the conveyance.    He has not, therefore, by his answer, placed himself in the position of a *bona fide* purchaser or incumbrancer for value, with equities superior to those of the complainant, though it should be admitted that he acted in good faith and without notice.'

" See, also, *Stone* v. *Welling*, 14 Mich. 514.

" It is possible that, by the putting up of the note and mortgage by Davis to the bank, the time of payment of the Davis debt was extended.    But, if it was, it was, at the most, an implied extension, and not such an extension as the law requires in order to constitute it a consideration; for, in order to make it that, the time of the extension must have been fixed and definite, and the bank must have put it out of its power to enforce collection during such period in reliance upon its additional collateral security, and this was not done.    When the notes cannot be enforced, except by an innocent holder, because of fraud in their inception, one who has not parted with value is not such a holder.    *Henriques* v. *Bank*, 84 Mich. 176

(47 N. W. 558). The note and mortgage were received as additional security to the Davis indebtedness. The defendant bank has parted with nothing, and is not, therefore, an innocent holder. The note having been given in a transaction declared by this court to have been a fraud on complainant, the court of equity will restrain its collection from complainant. *Henriques* v. *Bank*, 84 Mich. 177 (47 N. W. 558). In order to render the holder of a promissory note received in payment of an antecedent debt a holder for value, it must appear that the debt was extinguished by the transfer of the note. *Burroughs* v. *Ploof*, 73 Mich. 607 (41 N. W. 704).

"The complainant cannot be held personally liable by the bank, under the circumstances of this case; but justice demands that the bank be protected as far as it is possible to do so, and still permit complainant equitable relief; and a decree may be prepared releasing complainant from liability on the note and mortgage given defendant Davis and held by the defendant bank."

The court entered a decree in accordance with the prayer of complainant's bill. We concur with the circuit judge in holding that the bank is not an innocent holder of the mortgage.

The decree must be affirmed, with costs.

MONTGOMERY, C. J., HOOKER and GRANT, JJ., concurred. MOORE, J., did not sit.