Baze v. Arper.

ALBERT BAZE, Plaintiff in Error, *vs.* FRANCIS Z. ARPER, Defendant in Error.

ERROR TO THE DISTRICT COURT OF WASHINGTON COUNTY.

Previous to March 6th, 1852, Judges of Probate had no power to take the acknowledgment of conveyances of real estate. Subsequent to the last mentioned date they had such power. *R. S. p.* 211, *sec.* 8; *Comp. Stats.*, 495.

It is not necessary that official certificates of acknowledgment should be under seal unless the statute authorizing them expressly requires it. If the certificate styles the officer taking it as an officer authorized by statute to perform the act, it will be *prima facie* evidence of his official character. No seal is required by our act in 1852.

The act of 1856, published on *p.* 406 of the *Compiled Statutes*, does not comprehend acknowledgments of conveyances taken by Judges of Probate, but such only as were taken before the Clerks of the Supreme, District and Probate Courts,

A grantee of land who pays no new consideration, but takes the land in payment of a precedent debt, is not a *bona fide* holder for a valuable consideration, but takes the same subject to all claims and equities that could have been urged against his grantor.

The testimony had closed, and the Defendant was arguing the case to the jury. At this point the Defendant informed the Court that he had just discovered a material fact before unknown to him, and asked leave to prove it, which was refused. The Defendant, after concluding his remarks to the jury, presented an affidavit to the Court setting forth the newly discovered fact, and again asked leave to prove it, which was again refused. *Held*, that the Defendant was right in offering to prove the newly discovered fact immediately on ascertaining its existence; that had he waited until after verdict that fact alone would have been a sufficient answer to the application. *Held, further*, that to authorize a Court to open a case for newly discovered evidence, the evidence should be of that character that the party offering it could not, with due exercise of prudence, diligence and foresight, have discovered it before or at the trial, and that it should not be a mere explanation of the witness' evidence on the trial. Where a witness swears that the consideration of a deed was money paid at the time of the purchase, and after the trial states that it was for a precedent debt, an affidavit alleging the latter statement of the witness will be insufficient to open the case on the ground of newly discovered evidence. Something should appear to satisfy the Court that the fact exists, and can be proven; the mere statement of a witness who had sworn once the other way is too unreliable to be acted upon.

*Section* 7, *p.* 595 of the *Compiled Statutes* only cuts off the common law right that the defeated party in ejectment had to contest the right of possession as often as he saw fit. until arrested by a Court of Chancery. The statute limits this right to two trials, and declares the second judgment final, which means final so far as to bar another action for the same cause, but like all other final judgments it may be reviewed for errors committed on the trial.

The record of a conveyance acknowledged before an officer not authorized to take acknowledgments is no notice to subsequent purchasers, but the deed was good against an attaching creditor until the passage of the act of 1858. *Chap.* 52, *sec.* 1, *General Laws* 1858.

The Defendant in Error was the Plaintiff below, and brought an action of ejectment against the Defendant below, alleging that he was seized of lands from which the Defendant ejected him, and praying restitution.

The Defendant below pleaded two pleas. 1st. A denial. 2d. A special plea. That on the 7th October, 1850, one John R. Fish entered the land. That on November 12th of same

year one Henry M. Rice commenced suit against Fish, and attached the land, proceeded to judgment, bought it at execution sale, received a Sheriff's deed, and in the year 1853, deeded to the Defendant below. That on the 9th November, 1850, Fish, in order to defraud his creditor Rice, deeded to Willoughby & Powers, who colluded with him, and Willoughby & Powers deeded to the Plaintiff below, who, the answer alleged, took with notice. Both deeds were also alleged to have been without consideration. The reply admits the answer except the allegations of fraud and want of consideration. As to them it alleges no fraud and due consideration, but does not state what it was.

The case was tried at the special term of the District Court Washington county, before Mr. Justice McMillan, and a jury.

The Plaintiff introduced—

1st. A certified copy of a duplicate certificate of entry of the land from the Land Office to John R. Fish, dated October 7th, 1850.

2d. A certified copy of the Register of Deeds, of a Quit Claim deed from Fish to Willoughby & Powers, dated November 9th, 1850, for the same premises. The copy purported to have been acknowledged before H. A. Lambert, Judge of Probate of Ramsey county, and the certificate of acknowledgment was without seal. The Defendant below objected to its admission on the ground that the instrument of record, of which it purported to be a copy, was not entitled to record, and therefore the copy was not evidence. That the Judge of Probate had no power to take acknowledgments, &c. The Court overruled the objection and Defendant excepted.

3d. A deed from Willoughby & Powers to the Plaintiff below, dated May 31st, 1852, and purporting to be acknowledged before the Judge of Probate, but the certificate without seal. This was objected to by the Defendant below on the ground that it was not proved that the Probate Judge was not authorized to take acknowledgments. The objection was overruled, and the Defendant below excepted.

The Plaintiff then proved that the Respondent had been on the land since 1853, and rested his case.

The Defendant moved for a non-suit on the ground that Plain-

tiff had proved no seizin in himself; that no demand was shown before action brought, and consequently no wrongful entry; that the allegations of fraud in the answer were not denied.

The motion was denied and Defendant excepted.

The Defendant then proved the Sheriff's deed to Rice; the writ of attachment and Sheriff's return thereon, and recorded in the Register's office as alleged in the answer; and the deed from Rice and wife to Defendant below. The Defendant below then introduced evidence to show the fraud alleged in the answer.

On the cross-examination of Powers, he was asked the value of the land entered by Fish. On the objection of the Plaintiff below the question was excluded, and Defendant below excepted.

Powers on his cross-examination was also asked whether the Plaintiff, since receiving his deed, had conveyed the land to any person, which was objected to as immaterial, and excluded, and Defendant excepted. He was also asked whether the Plaintiff, since receiving his deed had not conveyed the land to Willoughby, or to any one for his benefit, or had he given him any contract with regard to it, or to any one for his benefit, to which the Plaintiff objected as immaterial and inadmissible under the pleadings; the objection was sustained, and the Defendant below excepted.

The witness Powers had testified that the Plaintiff below, Arper, had paid him for the land $250 in money. While counsel for the Defendant was summing up the case to the jury, and after he had been speaking some time, the other counsel for the Defendant stated to the Court that he had just discovered a fact as to the consideration of the deed from Willoughby & Powers to Arper; that the deed was given for a debt owing to Willoughby & Powers to Arper, and that Mr. Powers had himself so stated since the adjournment of the court. Counsel then stated that he thought Powers had not made himself properly understood when he said in his testimony that Arper gave $250.00 in money for deed to him, and that he thought Powers meant that it was what he regarded the same as money to him; and counsel asked leave to ask Mr. Powers, who was

in court, how the fact was. The counsel for the Plaintiff below objected, and the Court refused the permission, and the Defendant excepted.

After the counsel for the Defendant had concluded his remarks, the same request was again presented to the court, and on the affidavits of Edmund Rice and the Defendant's counsel, and again refused, and Defendants excepted.

The Court charged the jury that if Arper had knowledge of sufficient circumstances attending the transaction between Fish and Willoughby & Powers, to arouse a reasonable suspicion in his mind of an intent on the part of Fish to defraud his creditors, it is sufficient to charge him with notice, but refused to charge on the request of Defendants below " That if Arper had knowledge of sufficient circumstances to. put him on enquiry as to the claim of Rice, he was bound to pursue his enquiry, and cannot be considered a *bona fide* purchaser," to which refusal Defendant below excepted.

Points and Authorities of Plaintiff in Error.

I.—The Court below erred in admitting the copy of the record of the deed from Fish to Willoughby & Powers. Being acknowledged before a Judge of Probate it was not entitled to be recorded. *Comp. Stat., p.* 398. It is not denied that the Probate Judge had no authority to take this acknowledgment, but the case is sought to be affected by the statute of 1856 ; *p.* 406, of the *Comp. Stat.* It is submitted. that the statute only authorized the clerk of the Judge of Probate to take acknowledgments, and legalized them when taken before such clerk. *Laws of* 1853, *p.* 40. The law giving them clerks having been passed March 6th, 1852. And the statute creating Courts of Probate, and which was passed by the first Legislature, (case of *Francis Lee*, 1 *Minn.*, 70 and which may be found in the old *Revised Statutes, p.* 290,) gives the Judges thereof no power to take acknowledgments.

The Court equally erred in admitting the deed from Willoughby & Powers to Arper. It was not proved, unless by the certificate of acknowledgment of the Judge of Probate, which we have already seen he was incompetent to make.

II.—The Court below erred in refusing to nonsuit the Plaintiff.

(*a.*) A Plaintiff in ejectment need not, it is true, trace his title back to government in any case, but he must trace it to some one in possession under at least claim of title. Without that he shows no title or seizin.

(*b.*) In the case at bar there was no pretence that any of the prior grantors of the Plaintiff were ever in possession of the land.

His only title is a land office certificate. Such a certificate conveys no estate in the land. It is a mere contract on the part of Government that on the surrender of the certificate, it will grant the land. It is a mere contract of sale, giving an equitable and not a legal title, and does not entitle the holder to possession. If he takes possession, it must be deemed to be by virtue of a license from the owner, and not from any right given by such a contract. *Hill. on Vendors, p.* 3; *6th Barb.,* 116, *Kellogg vs. Kellogg.* That ejectment will not lie on a land office certificate, see 23 *How.,* 235, *Hooper vs. Scheimer*; *Fenn vs. Holmes,* 21 *How.,* 482.

Under the old system, a Defendant in possession under such a title might defend it against an action of ejectment, by filing a bill to stay the action at law, setting up his equitable title. And under the code he could avail himself of the same defence by way of answer; but he cannot bring his action of ejectment under either system till he has obtained the legal title.

III.—The Court below erred in excluding the question to the witness Powers as to the value of the land Fish entered. It bore upon the question of his good faith in the transaction.

IV.—The Court below erred in excluding the question to the witness Powers as to whether the Plaintiff below, Arper, had, since acquiring the land, re-conveyed to him, Powers, by deed or contract, or to any one for his benefit.

(*a.*) The question was clearly proper, to show the interest of the witness in the case. We were not bound to take his simple judgment or answer as to whether he was interested or not.

(*b.*) One of the main questions in the case was, whether

Arper was such a purchaser for value and without notice, as to enable him to recover, even though fraud was proved as between Willoughby & Powers and Fish. Had it then appeared by answer to this question that Arper had re-conveyed to Powers, and that Powers was now the only party in interest, or Powers & Willoughby, the question as to the good faith of Arper would have been eliminated from the trial, and the only question would have been as to the good faith or fraud of the transaction between Fish and his vendees.

V.—The Court erred in refusing to allow the Defendant below, on his application, after the evidence was closed, to show that the deed to Arper was in consideration of a precedent debt.

(a.) The evidence was of the highest importance ; for if the consideration of the deed were a precedent debt, Arper would have stood in no better position than his grantors. *Dickson vs. Tillinghast,* 4 *Paige,* 215; *Rosa vs. Brotherton,* 10 *Wend.,* 86; *N. Y. Bank vs. Worthington,* 12 *Wend.,* 593; *Payne vs. Cutler,* 13 *Wend.,* 605; *Clark vs. Ely,* 2 *Sandf's Ch.,* 168; 6 *Hill.,* 93; 1 *Barb.,* 225; 2 *Barb.,* 559; 4 *Barb.,* 304; 6 *Barb.,* 445.

(b.) It appeared that the evidence was just then discovered, and the witness in Court, and also the main witness of the Plaintiff. Had the evidence been discovered after verdict, and a motion made for a new trial on affidavit, the Court would have been bound to grant the motion ; and if the Court below did not, this Court would. Every requisite for such a motion would have been complied with. The evidence would have been material—newly discovered and not cumulative, and the statement was made in open Court, in the presence of the witness who was to prove it.

(c.) Being discovered before verdict, it was the duty of the Defendant below to offer it when he did ; otherwise it would not be ground for a new trial. The rule is thus laid down :

" If new evidence is discovered before the verdict is rendered, it should be submitted to the jury ; and if that is neglected, a new trial will not be granted for that cause." 1 *Gra. & Wat. on New Trials, p.* 481, citing *Higden vs. Higden,* 2 *Marsh Ky. R.,* 42.

vol vi.—29

Again : "A new trial will not be granted where the defect became known to the party at the trial," &c. *Wiggin vs. Coffin,* 3 *Story's Rep.*, 1.

And though a *nisi prius* Judge has undoubtedly a discretion as to the admission of testimony offered at such a stage of the case ; yet it is a legal discretion, and liable to review, the same as his action upon a motion for a new trial. *Mercer vs. Sayre,* 7 *Johns,* 306, was a case like this, and a new trial was granted.

A motion for a new trial could not have been made on this ground, for the reason that the Defendant below could not have made it appear that he had discovered the evidence since the trial.

This writ of error, then, is the only way in which the Plaintiff in Error can obtain redress.

VI.—The Judge erred in refusing to charge as requested by Defendant below, "That if Arper had notice of the claim of Rice, he could not be a *bona fide* purchaser." He did charge that if he had notice of a fraudulent transaction on the part of Fish, he would not be a *bona fide* purchaser.

The true rule is, that if Fish knew Rice claimed the transaction to be fraudulent, he must then interfere at his peril. Powers says that Arper knew of the attachment and consulted a lawyer about it, but the Court below held that not sufficient, but that he must have notice of Fish's fraudulent intent.

We submit that no such fraudulent intent could ever possibly be shown. All that in any case could ever be shown, would be that a purchaser knew that it was claimed the transaction was fraudulent.

The judgment should be reversed and a new trial awarded.

Points and Authorities of Defendant in Error.

I.—The Courts of Probate of the late Territory of Minnesota were Courts of Record, and the Judges of said courts were fully authorized and empowered to take acknowledgments of deeds ; but even had there been any doubt as to their power, acknowledgments taken before Judges of Probate and admitted to record pursuant thereto, were fully cured by the reme-

dial act of February 6, 1856. *Stat. of Minn.*, 398, *sec.* 8; *p.* 495, *Stats.; Stat. of Minn.*, 406, *secs.* 1, 2; In case of *Francis Lee*, 1 *Minn. R.*, 70; *Armstrong vs. Perry*, 5 *Wend.*, 536; *Bank of Charleston vs. Emeric*, 2 *Sandf.*, 718.

II.—The Register and Receiver's certificate of entry does not purport to be, nor is it a mere contract of sale, but is evidence of title to the lands described in it, whether in the hands of the original party or his alienee. *Stats. of Minn.*, 686, *sec.* 88; *Camp vs. Smith*, 2 *Minn.*, 155; 4 *U. S. Dig.*, 609, *sec.* 114; 4 *Miss.*, 458; 2 *U. S. Dig.*, 120, *sec.* 32; 7 *S. & R.*, 230; 1 *Wheaton's Selwyn*, 696, *and notes* and cases there cited; 2 *Greenl. Ev.*, *secs.* 304 *to* 307 and cases cited.

III.—It was not error in the Court to exclude the following question addressed to the witness Powers: "What was that land worth?" as it was not a proper cross-examination, but an attempt on the part of Defendant's Counsel to reopen their case and supply what they conceived to be omissions in their affirmative defence, and because the question was too indefinite as to time.

IV.—It was not error in the court to exclude the following questions addressed to the witness Powers on his cross-examination, viz: "Has Plaintiff since receiving his deed conveyed this land to any other person?" "Has Plaintiff since receiving this deed conveyed this land to Willoughby or to you or any one for your benefit, or has he given you any contract with regard to it or to any one for your benefit?"

V.—It was not error in the court to refuse leave to Defendant's counsel to recall a witness after the case had closed and Defendant's counsel had been for some time engaged in addressing the jury; nor is there anything before this Court of which it will take notice in respect to the alleged error in the court below; and if there was, the affidavit of the witness sought to be recalled is clear and unequivocal to the point, that he made no such statement as the one referred to in the counsel's request to the court below, and not only reiterates his former testimony but supports it by other affidavits. *The People vs. The Sup. Ct. of N. Y.*, 10 *Wend.*, 293; *Brisbane vs. Adams*, 1 *Sandf.*, 198.

VI.—It was not error in the court to decline to charge the

jury, "That if Arper had knowledge of sufficient circum- stances to put him on the inquiry as to the claim of Rice, he was bound to pursue his inquiries and could not be considered a *bona fide* purchaser," because not only was it too indefinite as to time, and an assumption of the fact that Fish committed a fraud, but would have been gross and inexcusable error so to charge.

VII.—That as to the Plaintiff in Error's specifications of error in his sixth point in respect to the charge, "That the Plaintiff must have notice of the fraudulent intent of Fish," there is no ground of error, as not only was the charge made at the request of Defendant's counsel, but there was no ex- ception to such charge.

VIII.—That this being an action of ejectment and there having been two successive verdicts for the Plaintiff in the court below, the last verdict is final and conclusive between the parties and this writ of error will not lie.

ALLIS & PECKHAM, Counsel for Plaintiff in Error.

D. COOPER, Counsel for Defendant in Error.

*By the Court*—FLANDRAU, J.—When the Territory of Min- nesota was organized, the laws of the Territory of Wisconsin, which were in force at the date of the admission of the State of Wisconsin, were extended over it by the *Organic Act, sec.* 12. By these laws the only officers authorized to take the ac- knowledgment of deeds were Judges and Commissioners of the Supreme Court, Notaries Public and Justices of the Peace. (*Laws of Wisconsin* in force at the organization of Minnesota Territory, published with the laws of the first ses- sion of the Legislature of Minnesota Territory of 1849, by James Goodhue, *p.* 134, *sec.* 10.) By *section* 1 *of chapter* 3, *of chapter* 20 *of the laws of* 1849, which took effect on the first day of December, 1849, Courts of Probate were erected and made Courts of Record, but the power to take acknowl- edgments was not conferred upon them or the Judges thereof. This continued to be the law until September 1st, 1851, when the Revised Statutes went into effect. *R. S., p.* 578, *sec.* 1.

By the Revised Statutes other officers were authorized to take acknowledgments, among whom were designated " any Judge of a Court of Record." *Id., p.* 211, *sec.* 8. But the Revised Statutes at the same moment they conferred their authority upon "Judges of a Court of Record," repealed the previous act of 1849, which made Probate Courts Courts of Record, and created new Probate Courts, which were not Courts of Record. *R. S., p.* 578, *sec.* 1; *Id., p.* 71. Neither Probate Courts or Probate Judges therefore had the power to take acknowledgments up to the fi.st of September, 1851. The deed from Fish to Willoughby & Powers of date of November 9, 1850, which was acknowledged before the Judge of Probate of Ramsey county, on the day of its date, was not entitled to be recorded, nor could it be read in evidence under such acknowledgment.

On the sixth day of March, 1852, the Legislature passed an act which declared the existing Courts of Probate to be Courts of Record, and gave them a seal and a clerk. *Laws and Reports of* 1853, *p.* 40; *Comp. Stats.*, 495. From this time the Judges of Probate were empowered to take acknowledgments, by virtue of *sec.* 8, *p.* 211, *R. S.; p.* 398, *Comp. Stats.* Therefore the deed from Willoughby & Powers to the Plaintiff of date of May 31, 1852, was properly received in evidence under the acknowledgment of the Probate Judge, so far as his competency to act was concerned. The objection went also to the absence of a seal to his certificate.

It is not necessary that these official certificates of acknowledgment should be under seal unless the statute authorizing them expressly requires it. 2 *Cow. & Hill's Notes to Phil. Ev., p.* 462. If the certificate styles the officer taking it as an officer authorized by statute to perform the act, it will be *prima facie* evidence of his official character. *Id.*, 461-2-3. No seal was required by our act.

But it is contended by the Plaintiff that the defect in the acknowledgment of the deed from Fish to Willoughby & Powers is cured by the statute of 1856 ; *p.* 406 of the *Comp. Stat.* The language of this act is as follows: "The acknowledgment, &c., * * * heretofore made and taken before any clerk of either the Supreme or District Courts and Judges of

Probate of this Territory, and the certificate of any such acknowledgment made by any such clerk," shall, &c. The language is a little obscure ; but the latter part of it refers to the clerks exclusively and does not include the Judge of Probate. In order to determine what was meant, whether the Judge of Probate, or the clerk of the Judge of Probate, we can take into consideration that the Judge had possessed the right previously, and since the sixth of March, 1852, and the clerk had never enjoyed it. It would seem more probable therefore that the curative law was aimed at the acts of officers who had never been authorized, than those who had been entitled to act for several years past. But what relieves the statute · from its apparent uncertainty of expression and makes it clear that the clerks and not the Judges were intended, is the second section, which employs the exact language used in the first in another sense. It is as follows :

"The several clerks of the District Courts and Judges of Probate of this Territory are hereby authorized to take acknowledgments of all deeds," &c. The words as here used, " Clerks of the District Courts and Judges of Probate," must certainly refer to the clerks of the Judges, and not the Judges themselves, because we cannot suppose the Legislature intended to confer a power upon the Judges which they then possessed, and had enjoyed and exercised since 1852, which would be senseless, while we may well conclude that they did intend to bestow it upon the clerks who had not previously been invested with it. The Legislature had undoubtedly discovered that the clerks of these courts had been exercising this power in an unauthorized manner, and designed to save their acts already done, and prevent further mischief by empowering them to act in future.

The counsel for the Respondent says there is no such officer as the clerk of a Judge of Probate. That the office created is clerk of the Probate Court, and not of the Probate Judge. This is technically correct, but the expressions, Probate Court and Judge of Probate, are frequently used as convertible terms by laymen, and the framers of such a statute should not be accused of knowing the difference. It means what we

have said, or it has nothing to operate upon; we must therefore adopt that construction in preference to a total rejection of that part of it. The deed therefore is not aided by the act.

The nonsuit with the evidence then in the case was properly denied. The certificate of entry by Fish, under whom the Plaintiff's grantor held, is declared by our statute to be *prima facie* evidence that the title to the lands is in the person named therein or his heirs or assigns. *Comp. Stats.*, 686, *sec.* 88; *Camp vs. Smith*, 2 *Minn. R.*, 155.

It does not appear from the case at what point in the testimony of the witness Powers the cross-examination began, but as he was called by the Plaintiff, and the question as to the value of the land at the time of the purchase from Fish was put by the Defendant, we are to suppose that it occurred on cross-examination. The witness had testified in the early part of his examination all about the consideration of the sale from Fish to Willoughby & Powers; the question of fraud in that transaction being directly in issue, the value of the land was clearly material, and also apposite as a cross-examination. We think the Court erred in excluding it.

The next ruling of the Judge it is unnecessary to consider; we do not think however that he erred in excluding the evidence.

It was a material point for the defence to prove that the deed from Willoughby & Powers to the Plaintiff was in consideration of a pre-existing debt, and not for a new and valuable consideration advanced by the grantee at the time of the purchase. The theory of the defence was that the transaction between Fish and Willoughby & Powers was fraudulent. After establishing that step in the defence, the Defendant was still bound to bring home notice of the fraud to the Plaintiff when he purchased, in order to succeed, if the Plaintiff had paid out money or other valuable thing in consideration of his deed. But on the contrary, had the Plaintiff merely relinquished a precedent debt for the land, he would not occupy the position of a *bona fide* purchaser, and the Defendant would be relieved from the necessity of convicting him of notice of the fraud. A grantee of lands who pays no new consideration, takes subject to all claims and equities that

could have been urged against his grantor. *Dickinson vs. Tillinghast et al.*, 4 *Paige*, 215. The same rule applies to the purchase of negotiable commercial paper. 10 *Wend.*, 86; 12 *Id.*, 593; 13 *Id.*, 605; 6 *Hill.*, 93; 1 *Barb.*, 225; 2 *Id.*, 559; 4 *Id.*, 304; 6 *Id.*, 445. After the testimony had closed and the Defendant had partially argued the case to the jury, the Court was informed by the Defendant that he had just discovered a fact as to the deed from Willoughby & Powers to Arper. That the deed was given for a debt owing by Willoughby & Powers to Arper; that Mr. Powers had himself so stated since the adjournment of the Court, and also stated that he thought Powers had not made himself properly understood when he said in his testimony that Arper gave $250 in money for the deed to him, and that he thought Powers meant that it was what he regarded the same as money to him, and asked leave to ask Mr. Powers who was then in Court how the fact was. This request the Court refused under the objection of the Plaintiff. The Defendant then concluded his remarks to the jury, and again renewed the request on the affidavit of Mr. Edmund Rice, which contained the facts previously stated by the Defendant, and the Court again refused to hear the evidence.

The Defendant was undoubtedly right in making the offer immediately on discovering the evidence. Had he waited until after the verdict was rendered, his delay would have been a sufficient answer to the application. 1 *Gra. & Wat. on New Trials, p.* 481. The Court had undoubted power to receive the testimony. *Mercer vs. Sayers*, 7 *John.*, 306. There is however one feature in the nature of the testimony offered in the case at bar, which constitutes a good answer to its being admissible as newly discovered evidence. The evidence must not only be material, and discovered since the trial, but must also be of a character that the party offering it could not with a due exercise of prudence, diligence and foresight, have discovered it before or at the trial. *Williams vs. Baldwin*, 18 *John.*, 489 Now this witness, it seems from the statements in the case, had testified on the trial that the consideration moving between Arper and himself for the land, was $250 in money paid at the time of the purchase. The

Defendant's counsel had an opportunity of cross-examining him upon the subject of the consideration and sifting out the truth, and he should have known that it was very important to show that it was a debt and not money. It was negligence not to press the witness closely upon this point and elicit every fact connected with the matter.

Again: The offer was to allow the witness Powers to explain his testimony given on the trial. In *Slimbach vs. Cal. Ins. Co.*, 2 *Caine's Rep.*, 132, where an explanation was offered as newly discovered evidence, the Court says: " This explanation comes too late. A witness under examination may explain and correct himself, but it will be dangerous and improper to receive any elucidation from him after the trial, and especially after the lapse of many months." In this case nine months had elapsed, which changes it materially from the case at bar. But the refusal to allow an explanation on a point which a proper cross-examination could have cleared up on the trial is not ground for a new trial.

The affidavit was materially defective; it merely alleged that the witness had stated that the consideration was a precedent debt. Even had the witness told the affiant that such was the fact, it would have been insufficient. Something should appear to satisfy the Court that the fact exists and can be proven; the mere statement of a witness who had sworn once the other way is too unreliable to be acted upon. *Shumway vs. Fowler*, 4 *John.*, 425. If it was intended to impeach the witness by proving contradictory statements made by him, it was equally inadmissible. 1 *Cain's Rep.*, 24; 4 *John.*, 425. For these reasons we do not think that the Court erred in refusing to allow the witness to be recalled.

The counsel for the Respondent insists that the verdict in his favor on the second trial is final to the extent that a writ of error will not lie to the judgment entered upon it. *Sec.* 7, *p.* 595, *Comp. Stats.*, which declares that such a judgment " shall be the final determination of the rights of the parties," only cuts off the common law right that the defeated party in ejectment had to contest the right of possession as often as

he saw fit until arrested by a decree of the Court of Chancery. *Bates vs. Stearns*, 23 *Wend.*, 481.   The statute limits this right to two trials, and declares the second judgment final— that is, final so far as to bar another action for the same cause; but like all other final judgments it may be reviewed for errors committed on the trial.

The statement in the paper books furnished the Court concerning the issue made by the pleadings, on the subject of notice in Baze of the prior deed of Fish to Willoughby & Powers, at the time he purchased from Rice, is as follows:

"The answer further alleges that the deed to Willoughby & Powers from Fish was never acknowledged so as to entitle it to be recorded, and that the Defendant never had any notice of it, and demands that the deed be cancelled and declared void, &c."

"The reply admits the allegations of the answer except as to fraud and want of consideration, as to them it denies them in general terms," &c.

The unauthorized record was no notice to Baze. *Shaubhut vs. Parret, decided at the July term*, 1861. And it is admitted by the pleadings he had no actual notice of the deed, yet he can take from his grantor Rice no more than he had under his attachment, judgment, and subsequent purchase at Sheriff's sale.   The deed from Fish to Willoughby & Powers was executed and delivered before the attachment of Rice against Fish was levied on the land, and although not recorded legally was good against the attachment.   *Greenleaf vs. Edes*, 2 *Minn. R.*, 264.   If Rice took nothing under his attachment and sale, Baze took no more from Rice.   Therefore the whole question returns to the fraud in the Sale from Fish to Willoughby & Powers, and that must be made out to render the land subject to the attachment of Rice, and through him, to pass the title to Baze.   The Defendant therefore cannot have judgment in his favor upon the admission in the pleadings that he took without notice of the Fish deed, because it was good against his grantor without record or notice, in the absence of fraud, and is equally so against him.

There must be a new trial for the error committed in receiving the transcript of the record of the deed from Fish to

Willoughby & Powers in evidence, against the objection of the Defendant, and in overruling the question to the witness Powers, touching the value of the land when sold to Fish.

New trial awarded.