# JANUARY TERM, 1895.

EMANUEL SCHLOSS ET AL. v. LYMAN FELTUS.

[See 96 Mich. 619.]

*Sale—Bona fide purchaser—Pre-existing debt.*

A naked, pre-existing debt is not such a consideration or payment for the transfer of a stock of goods as will defeat replevin by the original vendors, who set up fraud in the purchase of the goods from them.

Rehearing, upon application of the defendant, of case reported in 96 Mich. 619. Argued January 16, 1894. Former opinion affirmed January 8, 1895. The facts are stated in 96 Mich. 619.

*H. M. Oren* (*Julian G. Dickinson*, of counsel), for appellants.

*McMahon & Yerkes* (*M. C. Burch* and *Dwight Goss*, of counsel), for defendant.

McGRATH, C. J. Upon rehearing, after the fullest consideration, we find no reason to change the former opinion. 96 Mich. 619. The principal question in the case is whether a naked, pre-existing debt is such a consideration or payment for the transfer of a stock of goods as will defeat replevin by the original vendor, who sets up fraud in the purchase from him.

The rule, as laid down in 16 Amer. & Eng. Enc. Law,

837, is that a pre-existing debt is not such a considera-
tion as will sustain the plea of "*bona fide* purchaser for
value," except in the case of negotiable paper.   The cases
cited will be found to fully support the text.   Other cases
will be found collected in Tied. Sales, § 329; Hil. Sales,
p. 332; and Benj. Sales (6th ed.), p. 448.   Mr. Tiedman
says:

" Although there are a few cases which maintain that
a pre-existing debt is a sufficient consideration, the better
opinion is that it is not sufficient, because there is no
parting with value in reliance upon the title to the goods
thus acquired, and that an attaching or other creditor is
not a *bona fide* purchaser."

Some of the cases would seem to make a distinction
between a receipt of property in payment of a pre-existing
indebtedness, and a receipt in satisfaction or discharge of
such debt,[1]—that a satisfaction can only result from an
agreement to that effect; but payment operates as a dis-
charge or satisfaction of the debt, and in either case the
failure of title revives the debt.

The case of *Dickerson v. Tillinghast,* 4 Paige, 215, was
a bill to foreclose a mortgage given by Catharine Tilling-
hast.   Defendant Charles T. was the son of the mortgagor,
who received a conveyance of the premises from his mother,
subsequent to the mortgage, the consideration for which
was a debt due the son from his mother.   *Baze v. Arper,*
6 Minn. 220, was a case of where the only consideration
for a deed of land was a precedent debt.   *Root v. French,*
13 Wend. 570, was a case of where a grocer had assigned
his stock of goods to indemnify the assignee against liabil-
ity as indorser for the assignor.

No distinction is made between a conveyance in payment
of a debt and one given as security therefor.   This Court

---

[1] See *Mayer v. Heidelbach,* 123 N. Y. 339, and cases there cited.

has, in a number of cases, recognized the rule as applicable to conveyances as security for a pre-existing debt. *Boxheimer v. Gunn*, 24 Mich. 372; *Kohl v. Lynn*, 34 Id. 360; *McGraw v. Solomon*, 83 Id. 442; *Edson v. Hudson*, 83 Id. 450. But it is insisted that under our authorities this is the limit of the rule, and *Bostwick v. Dodge* (decided in 1844), 1 Doug. 413; *Outhwite v. Porter* (1865), 13 Mich. 533; and *Hanold v. Kays* (1887), 64 Id. 439,—are cited to support that contention.

In *Bostwick v. Dodge,* Bostwick gave his note to one Hooper, who indorsed it over to Dodge in payment of a debt due from Hooper to Dodge. The Court in that case say:

"It has been long and uniformly held that the extinguishment of a pre-existing debt was as valid and sufficient a consideration for the transfer of a negotiable instrument as the payment of money, or the delivery of any species of property whatever. That the rule is one of great convenience and necessity, even, to a commercial community, is too obvious to require illustration, and its adoption in no way contravenes the principles of natural justice."

In *Outhwite v. Porter,* Porter held notes made by one Cantine. Outhwite bought out Cantine's business, and Porter surrendered Cantine's notes, taking from Outhwite the latter's notes. Although *Bostwick v. Dodge* is cited, the Court held that Cantine had been released; that it was a case of novation by the substitution of one debtor for another, by the assent of the three parties.

In *Hanold v. Kays,* K. was indorser upon certain outstanding notes made by one O. In consideration of K.'s agreement to take up and pay said notes, O. conveyed certain land to K. The Court say that K. had paid the notes before notice, and that such payment formed a sufficient consideration for the deed. It had been repeatedly held by this Court that an agreement to pay—a mere

executory contract—was not a sufficient consideration, but that payment actually and in good faith made before notice entitled the vendee to protection, and such is the universal rule. In that case, however, the Court use language unnecessary for the determination of that case, and regard *Bostwick v. Dodge* as authority for saying that one who takes a deed of land in absolute payment of a debt due him is a *bona fide* holder for value. From an examination of the authorities, however, it will clearly appear that the rule laid down in *Bostwick v. Dodge* is an exception to the general rule, and the difficulty with the Hanold case is that it substitutes a recognized exception for the rule.

In *Currie v. Misa*, L. R. 10 Exch. 153, Lord Coleridge, in a dissenting opinion,—his contention being that the exception did not apply to a mere check in the hands of a holder for value,—says:

"It is too late to dispute that a pre-existing debt, due to the transferee of a bill, entitles him to all the rights of a holder for value. But it seems equally clear that this is an exception to general rules,—an extraordinary protection given to such a holder on grounds of commercial policy only, and in order to favor the unrestricted use, as currency, of negotiable instruments."

In *Whistler v. Forster*, 14 C. B. (N. S.) 248, it is said:

"The general rule of law is undoubted that no one can transfer a better title than he himself possesses. To this there are some exceptions, one of which arises out of the rule of the law merchant as to negotiable instruments. These, being part of the currency, are subject to the same rule as money; and if such an instrument be transferred in good faith, for value, before it is overdue, it becomes available in the hands of the holder, notwithstanding fraud which would have rendered it unavailable in the hands of a previous holder."

In *Bay v. Coddington*, 5 Johns. Ch. 54, the exception is recognized, but the court refused to apply the principle

to that case as made.   In *Dickerson v. Tillinghast, supra,* the case of *Bay v. Coddington* was referred to as sustaining the rule adopted; but, although *Bay v. Coddington* has been overruled, the rule of *Dickerson v. Tillinghast* remains the law of that state.   The cases in support of the rule excepting commercial paper are collected in 2 Rand. Com. Paper, §§ 461–465, and the subject is referred to in 2 Amer. & Eng. Enc. Law, 392.

There are authorities which refuse to recognize either rule or exception, but the rule is supported by the great weight of authority.   The serious conflict is as to the recognition of the exception in favor of commercial paper. Our own Court, in *Bostwick v. Dodge,* has determined that question; and the rule there laid down must be regarded as an exception to the general rule of law, and cannot be carried beyond the necessity that gave rise to it.   The doctrine of that case has no application to the transfer of a non-negotiable instrument.   In *Whistler v. Forster, supra,* the court refused to apply it, for the reason that the paper was not indorsed until after notice.

The term "*bona fide* purchaser" is borrowed from equity jurisprudence, and must be interpreted accordingly. Mr. Pomeroy, in his Equity Jurisprudence, says:

"There must be actual payment before any notice, or what in law is tantamount to actual payment,—a transfer of property or things in action, or an absolute change of the purchaser's legal position for the worse, or the assumption by him of some new, irrevocable, legal obligation." Sections 747, 749–751.

It is well settled by our own Court that one must pay as well as purchase.   *Thomas v. Stone* (1843), Walk. Ch. 117; *Dixon v. Hill* (1858), 5 Mich. 404; *Warner v. Whittaker,* 6 Id. 133; *Blanchard v. Tyler,* 12 Id. 339; *Stone v. Welling,* 14 Id. 514; *Matson v. Melchor,* 42 Id. 477.

In *Blanchard v. Tyler*, one Hearse claimed to be a *bona fide* purchaser. He paid nothing to Tyler. Tyler was owing him about $7.50, which was to apply on the purchase, and he gave a non-negotiable note for $600, less $7.50. The note was to be paid by turning out other notes, and this was not done until some time afterwards. The Court held that H. was not a *bona fide* purchaser; that whatever he paid was after notice, and such payment was made in his own wrong.

In *Stone v. Welling*, Stone filed a bill to foreclose a mortgage given by Hart, making Welling (a subsequent purchaser) a party defendant. The consideration for the deed from Hart to Welling was an agreement by the latter to give up to the former certain judgments and notes held by Welling against Hart, and to release the latter from an existing indebtedness. Mr. Justice COOLEY, for the Court, says:

" But the question in this case is whether there was an actual payment of value for the land by Welling before notice of complainant's mortgage; and, to make the agreement amount to such a payment, it must at least have been one which Hart, at the time, could have enforced as a discharge against Welling & Root. The evidence shows that the agreement was wanting in the consideration agreed upon, since the land covered by the deed had previously been incumbered by the mortgage to complainant. There was no impediment, therefore, to Welling & Root proceeding in the collection of their demands against Hart & Williams, if the facts had all been made known to them."

In *Chadwick v. Broadwell* (1873), 27 Mich. 6, the logs had been transferred to Chadwick in payment of the balance due on the stumpage contract between Chadwick and Lester; but the Court intimated that Chadwick had paid nothing, and that, should the purchase fail by reason of the fact that Mrs. Broadwell insisted upon her legal rights, the debt against Lester would remain.

In *Battershall v. Stephens* (1876), 34 Mich. 68, 74, Mr. Justice GRAVES refers approvingly to the rule that, in case the consideration is merely a past indebtedness, the purchaser is not entitled to be regarded as a *bona fide* purchaser.

In *Boxheimer v. Gunn*, 24 Mich. 372, Chief Justice CHRISTIANCY uses this language:

"The defendant's answer, as we have already seen, alleges the conveyance to Sutton to have been made to him merely as security for a precedent debt, and does not claim that any other consideration was paid or agreed to be paid; or that any time was to be given or had been given; or that the form of the debt was changed; or that he had relinquished any remedy in consideration of the conveyance; or, finally, that his own position would not be equally as good to-day, if the conveyance should turn out to be utterly valueless, as it was before the conveyance. He has not, therefore, by his answer, placed himself in the position of a *bona fide* purchaser or incumbrancer for value, with equities superior to those of the complainant, though it should be admitted that he acted in good faith, and without notice;" citing *Stone v. Welling*, 14 Mich. 514.

It certainly could not have been contended, in view of the authorities referred to, that an unexecuted agreement to pay would constitute one a *bona fide* purchaser.

I do not desire to be understood as saying that an agreement to extend the time of payment may not be such a consideration as will support a mortgage given for a pre-existing debt, nor that the release of security, or perhaps the surrender of evidences of indebtedness, may not be a sufficient present consideration to uphold a conveyance made in payment of a pre-existing debt. In the present case there was no change in the form of the debt.

It is urged that the vendor had other property out of which the purchaser might have made his debt. It is not necessary to pass upon that question. The transfer was made September 29, and on the 4th of October the vendee

was notified of plaintiffs' claim.    There is no evidence of any change in the debtor's circumstances respecting such other property, if he had any, between those dates. Under the rule laid down in *Stone v. Welling*, the creditor could then have avoided the discharge or release of the debt, to the extent of the failure of title.  As to the rule that the purchaser is entitled to protection only to the extent of payments actually made at the time of the notice, see, also, *Dickinson v. Wright*, 56 Mich. 42, and *Sheldon v. Holmes*, 58 Id. 138.

We did not deem it necessary in the former opinion to discuss other questions raised by the record, and do not now.

The judgment must be ·reversed, and a new trial ordered.

LONG and GRANT, JJ., concurred with McGRATH, C. J.

MONTGOMERY, J. *(dissenting)*.  I am not able to concur either in the result reached by my brother, the Chief Justice, nor in his interpretation of the previous decisions of this Court.   It is well settled that one who is defrauded by a purchaser of goods may rescind the sale and recover the goods, as against any but a *bona fide* purchaser for value.   Benj. Sales, § 428 *et seq*.   It is equally well settled that the maker of a promissory note may set up a failure of consideration, as against any but a *bona fide* purchaser for value.   It seems to me illogical and confusing to apply in the one case a test in determining whether one is a. *bona fide* purchaser which does not obtain in the other. To do so is to surround the question with haze and uncertainty.   For, while it may be said that the law merchant favors the transmission of commercial paper from hand to hand, yet the extent to which the law offers inducement to this free use of commercial paper is definitely defined, and the law upon the subject is admittedly settled to go to the extent only of protecting *bona fide* purchasers, and

to precisely the same extent it is the settled doctrine that the law favors transmission of personal property. What, then, constitutes a *bona fide* purchaser? The payment of a present consideration undoubtedly does. The surrender of security by a creditor would likewise constitute a sufficient consideration. The reason why an extension of time is a sufficient consideration to constitute the creditor a *bona fide* purchaser is that the creditor has, for a time, put it out of his power to proceed against the debtor. It seems to me that he has done this equally if he has discharged the original debt. Certainly, if the discharge of a pre-existing debt can be said to be parting with something of value, and a new consideration, when it is paid for a promissory note, it is inconceivable how it can, on the other hand, be said not to be of value, and a new consideration, when paid for a bale of cotton.

The cases in this Court involving the question of whether the purchaser of a promissory note or other property is entitled to claim the rights of a *bona fide* purchaser have turned upon the question of *what the purchaser parted with,* and not upon the question of what the seller parted with. If, therefore, the purchaser did not change his position, or surrender any rights, as, for instance, if he accepted a promissory note as security merely for an antecedent debt, without any extension of time or release of other security, he does not become a *bona fide* purchaser. This is clearly because there did not *pass from him* any sufficient consideration. But where there has been a discharge of an antecedent debt, as in *Outhwite v. Porter*, 13 Mich. 533, or an extension of time, as in *DeMey v. Defer*, 103 Mich. 239, and the other requisite conditions, the purchaser has been held a *bona fide* purchaser, for the reason that there did pass from such purchaser a sufficient consideration.

I do not agree with the broad statement of the Chief

Justice that there is no distinction between a conveyance received in discharge of a debt, and one given as security merely, if it be meant by this a conveyance given as security, unaccompanied by any extension of time or surrender of other securities. See *Williams v. Little,* 11 N. H. 66; *Bardsley v. Delp,* 88 Penn. St. 420; *Henriques v. Bank,* 84 Mich. 168, 176; *Burroughs v. Ploof,* 73 Id. 607; 1 Smith, Lead. Cas. (8th ed.) 1215; 2 White & T. Lead. Cas. Eq. 33, 75, 83, 85, 86, 88.

The cases in our own Court do not sustain the contention that a discharge of a pre-existing debt may not be a good consideration to constitute one a *bona fide* purchaser. In *Stone v. Welling,* 14 Mich. 514, no such doctrine is announced. The facts in that case were that Welling received a deed, which, though executed after the complainant's title accrued, was recorded first. The consideration of the deed to Welling is stated in the opinion to have been—

" An agreement by the firm of Welling & Root to give up to Hart, within 12 months from its date, judgments and notes against Hart and one Williams, both or either of them, to the amount of $450, including in that amount their indebtedness to Welling & Root. There was also a conditional agreement to procure and give up to Hart another note, of near a hundred dollars, held by one Hobert. Welling & Root at this time held a judgment against Hart & Williams, amounting to about $336, but whether there was any further indebtedness to them was not distinctly shown. Nothing appears to have been done towards performing this agreement with Hart after it was given."

So far from the case deciding that a discharge of an antecedent debt is not a sufficient consideration to constitute the creditor a *bona fide* purchaser, the opinion may be said to imply the contrary, for the Court take pains to point out that the facts do not make out that kind of a case. It is said:

"Nor do we think the agreement had the effect to discharge any indebtedness. It was executory in its character, covering, not only the claims of Welling & Root, but also other claims to be procured by them, and upon which it cannot be claimed that the agreement itself would have any effect whatever. * * *

"But the question in this case is whether there was an actual payment of value for the land by Welling, before. notice of complainant's mortgage; and, to make the agree-- ment amount to such a payment, it must at least have been one which Hart, at the time, could have enforced as, a discharge against Welling & Root. The evidence shows. that the agreement was wanting in the consideration agreed. upon, since the land covered by the deed had previously been incumbered by the mortgage to complainant."

The case of *Chadwick v. Broadwell*, 27 Mich. 6, turned upon the question of whether the vendor stood in position to vest the purchaser with such possession as would constitute him a *bona fide* purchaser. It was held that plaintiffs had given to Lester & Bundy such control over the logs as gave them the right to create a lien for sawing in favor of defendant; and, this being determined, the Court. proceeded to decide the question whether, by a purchase of the lumber in satisfaction of the claim of plaintiffs for the purchase price of the logs, plaintiffs had acquired priority over the defendant, as lien-holder. In determining this question, the Court say:

"We also think the circuit judge was right in holding that Mrs. Broadwell did not lose her lien by suffering the lumber to be placed on the Trowbridge dock. Under the agreement between Lester & Bundy and herself, the possession remained in her as much after it was transported to the dock as it did before. If she allowed *sales and deliveries* to be made to purchasers who were ignorant of her rights, the lien would thereby be waived to the extent of such sales, but not further.

"But the plaintiffs claim that they were *bona fide* purchasers, and, as such, were *put in possession* before they knew of any claim of lien. To this it may be replied that the whole transaction, as between them and Lester &

Bundy, was by word of mouth only; *no actual possession* was taken by plaintiffs, and the attempt at a *formal* transfer of possession *was ineffectual,* because not made by the party in whom the possession vested.    Mrs. Broadwell, in respect to the transaction, has been guilty of neither fraud, deception, nor negligence; the plaintiffs have paid nothing in consequence of it; and if their purchase fails, by reason of her insisting upon her legal rights, their debt against Lester & Bundy remains as before.    And, in this view, we think it immaterial whether or not the plaintiffs, at the time they agreed to take the lumber in satisfaction of their claim, had actual notice that Mrs. Broadwell insisted upon a lien, as defendants claim it is proved by Chadwick's testimony that they did.    The nature of their own contract with Clewley was such as to permit him to have the logs manufactured, and consequently to create a lien thereon for the labor; and, if they dealt with his assignees afterwards in respect to the lumber, they were bound, *at their peril,* to ascertain either that the lien had been satisfied or waived, or, on the other hand, that the assignees *had such possession of the lumber as to warrant the inference that no lien then existed."*

Neither was any such question as the sufficiency of a discharge of a past indebtedness as a consideration involved in *Battershall v. Stephens,* 34 Mich. 68.    In that case the consideration paid was a present consideration.    What was said on this subject was therefore *dictum,* and what *was* said was:    .

"It has also been very often held in many courts of the highest character that, in case the consideration is merely a past indebtedness, the purchaser is not entitled to be regarded as a *bona fide* purchaser."

The language was used in the course of an argument to show that want of good faith, in the sense in which it is used in connection with this rule, does not necessarily imply moral wrong.    But it will be seen at a glance that this single sentence decides nothing, nor does it import that the Court necessarily approved the rule.    Nor is it discoverable what rule is to be implied from the language,

if any. Was it intended to say that accepting security for past-due indebtedness, and giving time, does not constitute one a *bona fide* purchaser, or, that in a case where the creditor has disarmed himself by the discharge of his debt, he is not entitled to protection?

*Boxheimer v. Gunn*, 24 Mich. 372, is based upon *Stone v. Welling*, and contains nothing from which an inference can be drawn that the discharge of a pre-existing debt is not sufficient consideration. *Kohl v. Lynn*, 34 Mich. 360, and kindred cases, which establish the rule that before one may become a *bona fide* purchaser he must actually make payment, as well as contract to do so, and this before notice of prior rights or equities, clearly do not sustain the plaintiff's contention here, or militate at all against the doctrine that the discharge of an antecedent debt *is* payment.

The New York cases are based upon *Bay v. Coddington*, 5 Johns. Ch. 54, 20 Johns. 637. In the case, as reported in 5 Johns. Ch., Chancellor Kent said:

" The notes were not negotiated to them [the Coddingtons] in the usual course of business or trade, nor in payment of any antecedent and existing debt, nor for cash or property advanced, debt created, or responsibility incurred on the strength and credit of the notes. They were received from R. and S., and after they had stopped payment, and had become insolvent, within the knowledge of J. and I. C., and were seized upon by the Coddingtons as *tabulo in naufragio*, to secure themselves against contingent engagements previously made for R. and S., and on which they had not then become chargeable."

In view of these facts, it is remarkable that in *Dickerson v. Tillinghast*, 4 Paige, 215, it was stated that it was held in *Bay v. Coddington* " that the receiving of a negotiable note in payment of or security for a pre-existing debt, without any new consideration or other change of rights on the part of the persons receiving it, did not constitute them *bona fide* purchasers for a valuable con-

sideration, although they supposed that the person from whom they received the note had a perfect right to dispose of it in that manner," and that in *Stalker v. M'Donald,* 6 Hill, 93, it was again stated that the holding in *Bay v. Coddington* was that "where he [the creditor] has received it [the note] for an antecedent debt, either as a nominal payment or as a security for payment, without giving up any security for such debt which he previously had, or paying any money, or giving any new consideration, he is not a holder of the note for a valuable consideration, so as to give him any equitable right to detain it from its lawful owner." Whether it should be said that the rule now established in New York is due to misapprehension as to what was involved for decision in *Bay v. Coddington,* two facts should be considered, in determining the weight to be given to these adjudications, the first of which is that the court make no distinction, in determining as to the sufficiency of a consideration to constitute one a *bona fide* purchaser, whether dealing with a purchaser of a note or of chattels. See *Lawrence v. Clark,* 36 N. Y. 128; *Weaver v. Barden,* 49 Id. 286; *Dickerson v. Tillinghast, supra.* But a more conclusive reason why the New York cases should not be decisive here is that this Court early refused to adopt the New York rule, and established the contrary doctrine. In *Outhwite v. Porter,* 13 Mich., at page 539, it was said:

" The New York cases are cited to the effect that a person taking negotiable paper for a precedent debt is not a holder for value, and that such paper, in his hands, is subject to the equities existing between antecedent parties. But the rule established by these cases was directly repudiated in this State more than 20 years ago, in *Bostwick v. Dodge,* 1 Doug. 413, which established directly the contrary doctrine. This case has been uniformly recognized as law by this Court, and we are entirely satisfied with the correctness of the principle upon which it rests."

See, also, *Hanold v. Kays*, 64 Mich. 439, 446, in which it was said by Mr. Justice MORSE:

" The doctrine that the extinguishment of a pre-existing debt is not a valid and sufficient consideration for the transfer of a negotiable instrument was repudiated in *Bostwick v. Dodge*, 1 Doug. 413; and it has ever since prevailed in our State that such discharge of a precedent indebtedness is as good a consideration, in such a case, as the payment of money, or the delivery of any species of property whatever."

See, also, *Baker v. Pierson*, 5 Mich. 459; *Shufeldt v. Pease*, 16 Wis. 689; *Blanchard v. Stevens*, 3 Cush. 162; *Williams v. Little*, 11 N. H. 66; *Burroughs v. Ploof*, *supra*; and *Henriques v. Bank*, *supra.*

On the former hearing, I concurred in the reversal of the judgment, without stating my reasons. The circuit judge charged the jury as follows:

" They [plaintiffs] could not rescind this sale, or recover in this suit, unless they show, by a preponderance of evidence, three things: In the first place, they must show to your satisfaction, by a preponderance of evidence, that the sale of this bill of goods, made by the plaintiffs to Smith & Hassock, was induced or brought about, in part at least, by fraudulent representations;   *   *   *   or else you must be satisfied that at the time Mr. Smith purchased the goods there was no intent on his part, or on the part of the firm, to pay for them. You must also find, in addition to that fact, in order to entitle the plaintiffs to recover, that Mueller & Raber, who first purchased the goods from Smith & Hassock, were not purchasers in good faith, for a valuable consideration,—*bona fide* purchasers, without knowledge that there was any fraud in the sale and purchase of the goods in the first instance. You must also find that the defendant, Lyman Feltus, was not a purchaser in good faith, and that he had knowledge of the fact of the fraud, or that such facts and circumstances came to his knowledge as to raise the presumption that he knew it, or to put him on his guard. If the plaintiffs fail to show any one of these three things, they cannot recover, and your verdict should be for the defendant."

I think, under the circumstances of this case, if the plaintiffs established the fraud on the part of the purchasers, the burden is with the defendant to show that he was a *bona fide* purchaser, or that his immediate grantors, Mueller & Raber, were. *Berry v. Whitney,* 40 Mich. 65; *Letson v. Reed,* 45 Id. 27; *Carrier* v. *Cameron,* 31 Id. 379; *Schaible v. Ardner,* 98 Id. 70; *Whitaker Iron Co. v. Preston Nat. Bank,* 101 Id. 146.

For the error in this instruction, the judgment should be reversed, and a new trial ordered.

HOOKER, J., concurred with MONTGOMERY, J.