HEES *v.* CARR.

CHATTEL MORTGAGES—CONSIDERATION—ANTECEDENT INDEBTEDNESS.
A chattel mortgage given to secure a precedent indebtedness is valid as against one from whom goods had been fraudulently purchased by the mortgagor, where the mortgagee had no knowledge of the fraud, and a part of the indebtedness was incurred subsequent to such fraudulent purchase, and upon the agreement of the debtor to give such security whenever it should be demanded.

Error to Wayne; Lillibridge, J. Submitted January 4, 1898. Decided February 16, 1898.

Replevin by George H. Hees and others against Robert T. Carr and others. From a judgment for defendants, plaintiffs bring error. Affirmed.

*Moore & Moore*, for appellants.

*Philip T. Van Zile*, for appellees.

HOOKER, J. Carr, Adix & Co. was a mercantile co-partnership, which began business in February, 1894. Joseph H. Valpey and Henry H. Valpey constituted a similar firm, and obligated themselves to indorse the paper of Carr, Adix & Co. to the extent of $4,000, which they did. In January, 1895, the Valpeys asked for a chattel mortgage; and Carr, Adix & Co. promised, in consideration of past and prospective aid, to secure the former company by a mortgage upon its goods whenever it should insist upon it. In accordance with this agreement, the Valpeys loaned the firm of Carr, Adix & Co. further sums of money, and indorsed their paper. On May 1st, when the mortgage was given, it is said that they owed the Valpeys, for notes indorsed, $4,500, and for cash advanced, $1,500. The mortgage was not filed until May 10th. Carr, Adix & Co. approached the plaintiffs for

credit in February, and it is claimed that they concealed their relations with the Valpeys, and their agreement to mortgage; representing that they had a stock of $4,000, and owed but $250, whereby they obtained from the plaintiffs goods amounting to $1,139, most of which were delivered in February and March, and were never paid for. On discovering the facts about the mortgage, the plaintiffs replevied a portion of the goods furnished, claiming that they were procured by fraud; making Carr, Adix & Co. and the Valpeys defendants. The jury rendered a verdict for the defendants for the value of the property replevied, viz., $490, from which the defendants consented to remit $152.50; being the amount of a bill of goods furnished after the making, but before the recording, of the mortgage. The plaintiffs appeal.

Counsel seem to agree that the crucial question in the case is whether the Valpeys were *bona fide* holders, for value, of the mortgage; it being contended by their counsel that they are, because it was given in compliance with a promise, under which credit was furnished and money paid, some of which was later in point of time than the furnishing of the goods by the plaintiffs, with the exception of the bill remitted. On the other hand, it is said that inasmuch as the giving of the mortgage was after the indorsement and payments, and not concurrent in point of time with any of them, it was taken to secure pre-existing debts, notwithstanding the fact that it was given in compliance with a promise to give it, in reliance upon which the Valpeys indorsed paper and paid money.

It is clear that a payment by the Valpeys previous to the sale of goods by the plaintiffs would not furnish such a consideration for the mortgage as would cut off this replevin. To hold that it would, would be to say that the promise to give a mortgage would be better than a mortgage executed and delivered, but unrecorded. We understand that counsel for the defendants does not contend otherwise, but bases the defense on the proposition that defendants subsequently parted with money on the prom-

ise to give a mortgage, and that the giving of such mortgage later, in compliance with the promise, is in effect the same as though it had been given at the time of the payment, and is valid as against intervening creditors. The charge of the learned circuit judge upon this point was, in substance, that:

"If you believe that Valpey & Co. assumed the liability of $1,500, or increased their liability $1,500, for Carr, Adix & Co., after these goods were delivered, and that Valpey & Co. did not know of any fraud of that kind, then they are protected as *bona fide* mortgagees."

It is our understanding that the validity of a mortgage, as against a vendor defrauded in the previous sale of the mortgaged goods, is not necessarily established by the fact that it is given for a debt incurred by the mortgagor after the fraudulent purchase. It must depend on an entirely different consideration, viz., that another than the vendor has acquired a title to or interest in the goods, in ignorance of the fraud, and that he has parted with value in consideration of such title or interest. These elements being present, it is not necessary that the giving of the mortgage be concurrent in point of time with the payment, so long as the right to have the mortgage is a part of the consideration for the payment. It is no less the consideration because given at a later time, in compliance with the obligation to do so. It is said that an executory promise to give a mortgage, in consideration of which money is paid down, could not be enforced, and, moreover, if valid between the parties, would be void as to creditors if not recorded. Whether equity would enforce a lien upon goods when a mortgage was promised in consideration of money paid, and not given, we need not inquire (but see Jones, Chat. Mortg. § 3), because in this case the obligation had been recognized and performed by giving the mortgage before any other rights or equities had intervened; and the only question before us is whether it is supported by value, or, as said in *Schloss* v. *Feltus*, 103 Mich. 529 (36 L. R. A. 161), whether it appears that

the Valpeys "paid as well as purchased." We have already said that the executory promise to give a mortgage might not be any better than an unrecorded mortgage, under the statute, and would not stand as against intervening creditors. See Jones, Chat. Mortg. § 3.

We need not discuss the validity of a mortgage given for and at the time of the payment of money, as all recognize that it is valid, and binds property against a vendor, though fraudulently procured. See *Schloss* v. *Feltus*, *supra*, where the subject is discussed; Benj. Sales (6th Ed.), 446; Tied. Sales, § 329, and cases cited; 8 Am. & Eng. Enc. Law, 756, 842. All of these authorities recognize the rule that the purchaser must part with something of value, and they agree that merely taking security for an antecedent debt does not, *alone*, furnish a valuable consideration. But here the consideration for the mortgage was a precedent debt, and also the payment of a sum of money which would not have been paid but for the promise to give the mortgage. Had the mortgage been given then and there, it could not be said that it was given for an antecedent debt, and the claim of the plaintiffs is predicated upon the interval of time that elapsed between payment and the delivery of the mortgage. In our opinion, it was essentially one transaction, and, instead of being given solely for an antecedent debt, the mortgage was given for a concurrent obligation, from which the mortgage was inseparable, and to that extent, at least, bound the property. The passage quoted from the charge would be too broad, inasmuch as it appears to omit reference to the importance of the agreement to give the mortgage, but for the fact that the undisputed testimony shows that the money was paid in reliance upon the agreement to give the mortgage. This was doubtless the reason for its omission.

As the undisputed evidence shows that the Valpey mortgage was taken in good faith, and for value parted with in reliance upon it, it was a perfect defense, except as to the amount remitted; and, as the court might have

said so to the jury, the other questions raised need not be considered.

The judgment of the circuit court is affirmed.

The other Justices concurred.